MICHAEL B. LEAVITT

*v.*

BRUNO KENNICOTT.

*Filed at Ottawa April 1, 1895—Rehearing denied October 16, 1895.*

1. TRIAL—*contract for services—when salary begins is for the jury.* Whether payment of salary to a theatrical manager begins at the date of the contract for services at a weekly salary, or at a subsequent date when the theater is opened, is a question for the jury, where the contract is capable of the construction that the employer did not have the theater at the date of the contract.

2. CUSTOM—*as to pay of theatrical manager—proper evidence in connection with contract.* A custom in the theatrical profession not to pay for services as manager of a theater except during the theatrical season may be regarded in construing a contract employing a manager at a weekly salary with an added percentage of profits.

3. EVIDENCE—*of custom of particular business does not vary contract.* Evidence of such a custom is not inadmissible as an attempt to vary the language of the contract of hiring, but is merely by way of explanation.

*Leavitt* v. *Kennicott,* 54 Ill. App. 633,. reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

CASE, HOGAN & CASE, for appellant.

ALLAN C. STORY, and FRED W. STORY, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

This is an action of assumpsit brought by Kennicott, the appellee, against Leavitt, the appellant, to recover damages for breach of a contract of employment. The trial below was before a jury and resulted in verdict and judgment for plaintiff. This judgment has been affirmed by the Appellate Court, and the present appeal is prosecuted from such judgment of affirmance.

The contract, which is set out *in hæc verba* in the third count of the declaration, is as follows :

"Dated May 25, 1889.—I hereby engage Bruno Kennicott as manager of the New Windsor Theater of Chicago, providing I have such theater, at a weekly salary of forty dollars per week, and in addition thereto I agree to give him five per cent of the net profits of said theater, the same to be accounted and ascertained at the end of each and every season. It is, however, fully understood that the said Bruno Kennicott is in no way to be considered a partner with me in said theater, and that he is, in all

things in and about said management, subject to my directions and approval, and he is to be fully competent to perform the duties of manager of said theater, and to render faithful services, at all times, for the artistic and financial success of said theater.    M. B. LEAVITT.

"I hereby agree to accept the above agreement, conditions and arrangements.    BRUNO KENNICOTT."

While the plaintiff below was upon the stand as a witness, the court said: "This jury will be instructed to pay $40.00 per week from the time the contract commenced until the close of the season of 1891." Subsequently the court instructed the jury, that the plaintiff was entitled to recover "the amount of the salary from the date of the contract to the date of the discharge at $40.00 per week less the payments," etc. It is claimed by appellant, that the court erred in thus instructing the jury.

The evidence of the plaintiff tended to show, that the theater building had burned down in 1889, and that the defendant, Leavitt, holding a lease thereof, did not open the theater until September 2, 1889, a little more than three months after May 25, 1889, the date of the contract; that this theater, and theaters generally, are closed in the summer about three months, between some time in June and some time in September, leaving about 40 weeks in each year for what is known as the theatrical season; that the plaintiff was discharged by the defendant on September 24 or 26, 1890, after the beginning of the second season; that the first season began on September 2, 1889, and ended in June, 1890; and that the plaintiff had received his salary regularly at the rate of $40.00 per week from time to time from September 2, 1889, up to June, 1890, but had been paid nothing for the time preceding September 2, 1889.

The contract recites, that Kennicott is engaged "as manager of the New Windsor Theater of Chicago, providing I have such theater," etc. This language, in con-

nection with the fact that the lease had been executed
theretofore on May 15, 1889, might be capable of the con-
struction that the employment would begin when the
employer should have the theater, and that he did not
then have it. We are inclined to think, that the jury
should not have been instructed as above indicated, but
that it should have been left to them to determine from
all the evidence, whether or not the payment of the sal-
ary was to begin at once at the date of the contract, or
subsequently when the theater was opened on Septem-
ber 2, 1889.

But, if we are wrong in this view, we think that it was
error to refuse to allow the defendant to show, if he
could, that the custom in the theatrical profession was
not to pay for such services, as those which are men-
tioned in the contract, except during the theatrical sea-
son. The plaintiff had been allowed to state when upon
the stand, that it was the custom to pay managers during
the summer or vacation season. Defendant proved, that
there was a custom with reference to such payments, and
made an offer to show that the custom was not to make
payments during the summer between the date of the
closing of the season and its opening in the fall. Objec-
tion to this offer was sustained, and the jury were in-
structed upon the theory that the salary was to be
allowed for the whole year.

The admission of the offered evidence would not have
operated as a permission to vary the meaning of a writ-
ten contract by parol, but its effect would have been to
explain the meaning of the words used in the contract.
The contract says: "at a weekly salary of forty dollars
per week," but fixes no time during which the weekly sal-
ary is to be paid. If it could be shown that the "weeks"
here referred to were, by the custom and usage of the
theatrical profession, the weeks of the theatrical season,
and not all the weeks of the whole year, we see no reason
why testimony to that effect was not allowable.

In *Grant* v. *Maddox*, 15 Mees. & Wels. 737, there was a contract between the plaintiff, an actress, and the defendant, a theatrical lessee and manager, which provided for an engagement for "three years at a salary of five, six and seven pounds per week in those years respectively." On the part of the defendant, evidence was tendered to show, that, according to the understanding and custom of the theatrical profession, under an engagement to perform for one or more years, actors were never paid during the time of vacation when the theater was closed, but only during what was called the theatrical season. The evidence was admitted, and the jury were instructed, that the question for them to decide was, whether the contract was to perform and be paid throughout the three years, or only during the theatrical season in three years. It was there held, that the evidence was properly admitted and the question properly left to the jury, ALDERSON, Baron, saying: "It is perfectly true that you have no right to qualify or alter the effect of a written contract by parol evidence, but it is perfectly competent to you to qualify or alter, by parol evidence, the meaning of the words which apparently form the written contract, and to insert the true words which the parties intended to use,—that is, not to alter the contract, but to show what the contract is. Wherever the words used have, by usage or local custom, a peculiar meaning, that meaning may be shown by parol evidence. Here the contract is that the plaintiff is to be paid for three years a salary of five pounds, six pounds and seven pounds per week in those years. That means, according to the evidence and the finding of the jury, that she is to be paid so much per week during every week that the theater is open in those years."

For the reasons thus stated, the judgments of the Appellate and circuit courts are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*