PAUL OSCAR STEIDTMANN, Defendant in Error, vs. THE JOSEPH LAY COMPANY, Plaintiff in Error.

*Opinion filed April 23, 1908.*

1. APPEALS AND ERRORS—*cause should be remanded by Appellate Court if reversal is for errors of law.* Where a judgment is reversed by the Appellate Court for want of evidence, and final judgment is entered the facts found should be recited in such judgment; but if the reversal is for erroneous rulings on questions of law, the cause should be remanded for new trial.

2. SAME—*what is not a finding of an ultimate fact.* In an action of assumpsit, where the terms of the written contract are in dispute, a finding by the Appellate Court in its judgment reversing a judgment in favor of the defendant, that the defendant, in consideration of the sale and delivery of certain merchandise, "became liable to pay for the same in accordance with its contract to that effect," is not a finding of any ultimate fact.

3. SAME—*cause should be remanded if reversal is for errors of law.* Upon appeal from a judgment of the Appellate Court reversing without remanding, if the recital in the Appellate Court's judgment is not a finding of any ultimate fact and it appears the trial court erred in excluding proper evidence the Supreme Court will remand the cause to the Appellate Court, with directions to either remand the cause for another trial if it shall reverse for errors of law, or recite the ultimate facts if it shall reverse because it finds the facts to be different from those found by the trial court.

4. CONTRACTS—*party is presumed to have contracted with reference to general usages or customs.* One who enters into a contract in the ordinary course of business is presumed to have done so with reference to any existing general usage or custom relating to such business, whether he knew of the custom or not.

5. SAME—*evidence is admissible to show general understanding of words and phrases.* Parol evidence is admissible to show that certain words and phrases used in a trade contract have a well known and established meaning among merchants and dealers engaged in the class of trade which is the subject of the contract.

6. ACCORD AND SATISFACTION—*what does not amount to settlement.* Acceptance by a creditor of a remittance from the debtor "to close account on last shipment" does not amount to a settlement in full, even though the remittance is for all the debtor admits to be due, if the circumstances of the transaction are not such as to indicate to the creditor that the remittance was sent upon condition that its acceptance was to operate to discharge the debt.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on appeal from the County Court of Cook county; the Hon. ALVAH F. WINGERT, Judge, presiding.

This is an action of assumpsit by the defendant in error against the plaintiff in error, in which a trial by the court without a jury resulted in a judgment for the defendant. On appeal by the plaintiff the Appellate Court reversed the judgment and entered a judgment in that court against the plaintiff in error for $455.64, to review which this writ of error is prosecuted.

The defendant in error is an exporter residing in Hamburg, Germany, doing business under the name of Steidtmann & Nagel. He sold to the plaintiff in error, of Ridgeville, Indiana, ten tons of grand bassa, a kind of brush used in making stiff brooms for street sweeping. The price was $200 per ton, and the only question is which party was to pay the United States customs duty under the contract, which was made entirely by correspondence. The first letter is as follows:

"HAMBURG, *March 3rd, 1904.*
"*The Joseph Lay Company, Ridgeville.*

"GENTLEMEN—We are sorry to be without your esteemed orders since long time, and therefore beg to offer you, as per samples herewith, bass, first-rate quality, cut into all current lengths. * * * Grand bassa 8½ cs. * * * pr. ℔ c. i. f. New York, U. S. A., duty and consular invoice unpaid, against cas. less 1½% or three months' acceptance from date of b/l against documents. Hoping to be favored with your esteemed order, we remain

"Very truly yours,
STEIDTMANN & NAGEL."

Plaintiff in error replied as follows:

"RIDGEVILLE, IND., *March 15, 1904.*
"*Messrs. Steidtmann & Nagel, Hamburg, Germany.*

"DEAR SIRS—We appreciate the efforts that you have put forth to get our orders for bass, having just received yours of the 3d inst., and also samples of bass. The only kind that we can use of the samples is the grand bassa, that being the grade that we now call African bass and which we are getting in this country. Now, for this we have to pay $200 per ton at present, f. o. b. cars at this

town, Ridgeville, Indiana, with privilege of deduction of two per cent for cash in ten days. How does your price correspond to this? The facts are, that we are not enough posted in the matter of shipping to make the proper deductions for terms as you have quoted them. In order to start the matter so it can be better understood, we will say that we can take five tons of 14-inch and five tons of 16-inch grand bassa, per sample that you send, at $200 per ton, laid down here at Ridgeville, Ind., two per cent off for cash in ten days from arrival. This will enable you to find whether you can stand the expense of laying it down at this price.

"Yours very truly,<br>
THE JOSEPH LAY CO."

On March 29 the defendant in error replied:

"HAMBURG, *29th March, 1904.*

*"The Joseph Lay Company, Ridgeville, Ind.*

"DEAR SIRS—Your favor of the 15th inst. to hand and duly noted. We thank you for your order on five tons of 14-inch grand bassa, quality as per our sample, five tons of 16-inch do. And in order to do the business with you we will meet you and execute this order at your limit of $200 per ton, free at Ridgeville, Ind., U. S. duty unpaid, two per cent off for cash within ten days from arrival. We shall ship these ten tons as soon as possible and send you invoice and b/l before long.

"Very truly yours,<br>
STEIDTMANN & NAGEL."

The goods were shipped in two lots, and the plaintiff in error paid the duty, amounting to $455.64, the amount of the judgment in the Appellate Court. This amount was deducted from the invoice and the balance was remitted to the defendant in error.

EMERSON E. McGRIFF, FREDERICK S. McCLORY, and LYMAN M. PAINE, for plaintiff in error.

A. W. MARTIN, and EDWARD H. S. MARTIN, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

This writ of error is brought here under the provision contained in section 119 of the Practice act, that in all cases in which the justices of the Appellate Court are divided in opinion upon the law or facts, if final judgment is rendered

in the Appellate Court, the cause may be removed to the Supreme Court by appeal or writ of error. The amount for which judgment was rendered by the Appellate Court was less than $1000, but under the provisions of this section the amount is immaterial. Section 120 of the Practice act provides that if the Appellate Court shall make a final determination of any cause, except in chancery, as the result of a finding of facts different from the finding of the trial court, such Appellate Court shall recite in its final judgment the facts as found by it.

Where a judgment is reversed by the Appellate Court on the ground that it is not sustained by the evidence, it is the duty of the court to recite in its final judgment the facts as found by it. Where the judgment is reversed on account of any erroneous ruling on any question of law arising on the trial, the cause should be remanded for a new trial. (*Wilbor* v. *Ewen*, 183 Ill. 626.) The Appellate Court made what purports to be a finding of facts, as follows: "And the court, upon the allegations and proofs in the record in this cause contained, doth find the issues for the appellant, and doth further find that appellee, in consideration of the sale and delivery to it by appellant of certain merchandise, became liable to pay for the same in accordance with its contract to that effect." This is no finding of any ultimate fact whatever. The terms of the contract were the very thing in dispute, and to say that the defendant became liable according to its contract determines nothing. It is manifest that the judgment of the Appellate Court turned, not upon any question of fact, but upon the construction to be given to those parts of the letters of the parties in regard to the customs duty. The trial court held that by the terms of those letters the plaintiff was bound to pay the duty and the Appellate Court that he was not, and this was a question of law.

It was assigned for error in the Appellate Court that the trial court erred in refusing to admit proper evidence

offered by the plaintiff. The plaintiff offered to prove by the depositions of witnesses taken in Hamburg and the testimony of witnesses engaged in the import trade in Chicago, that the meaning of the expressions, "laid down here at Ridgeville, Indiana," "free at Ridgeville, Indiana, U. S. duty unpaid," "f. o. b. Ridgeville, Indiana," and "free at Ridgeville, Indiana," did not differ in meaning, and according to the common, universal and exclusive understanding of merchants and importers throughout the United States and at Hamburg, their meaning was that the seller was to pay the cost of packing and transportation to Ridgeville, Indiana, and that the expense of customs duty on the goods was to be borne by the purchaser, without deduction from or credit on the purchase price of the goods as quoted. On objection by the defendant the court excluded the evidence.

The testimony of witnesses is admissible to explain not only technical words of art or science, but words or phrases having a local meaning or a special meaning in a particular calling, trade, business or profession. Such evidence does not contradict or change the written instrument. The presumption is that such terms were used according to their understood meaning in the place or the business with reference to which the contract is made, and evidence as to such meaning is the only method of ascertaining the intention of the parties in entering into the agreement. (1 Greenleaf on Evidence, sec. 280; *Leavitt v. Kennicott,* 157 Ill. 235; *Reed v. Hobbs,* 2 Scam. 297; *Lowe v. Lehman,* 15 Ohio St. 179; *Myers v. Walker,* 24 Ill. 134.) A person entering into a contract in the ordinary course of business is presumed to have done so in reference to any existing general usage or custom relating to such business. (*Collins Ice Cream Co. v. Stephens,* 189 Ill. 200; *Chisholm v. Beaman Machine Co.* 160 id. 101; *Leavitt v. Kennicott, supra.*) And this is so whether he knew of the custom or not. (*Samuels v. Oliver,* 130 Ill. 73; *Taylor v. Bailey,* 169 id. 181; *Lyon v. Culbertson,* 83 id. 33; *Doane v. Dunham,* 79 id. 131; *Bailey*

*v. Bensley,* 87 id. 556.)   Such general custom and technical meaning of words may be proved without being specially pleaded.   (*Stewart* v. *Smith,* 28 Ill. 397; *Lowe* v. *Lehman, supra.*)   The evidence offered should have been admitted.

On April 22, 1905, the plaintiff in error mailed to the defendant in error a draft for $807.08, "to close account on last shipment."   Defendant in error collected the draft, and it is now insisted that the account was thereby settled in full.   In an earlier letter the defendant in error had stated that Frederic C. Haisler, of Chicago, would act as arbitrator in the matter.   The letter of the plaintiff in error stated that the draft was included "as per conclusion arrived at in conversation with your Mr. Haisler and our Mr. S. C. Lay," and expresses the trust that Mr. Haisler's "letter to you will fully explain regarding our understanding."   There is no evidence that any conclusion was arrived at between Mr. Haisler and plaintiff in error, but, on the contrary, in acknowledging receipt of the draft defendant in error writes: "We are very sorry to hear from Mr. Frederick C. Haisler that you do not wish to have the matter about the duty arbitrated."   While it is manifest that the amount of the draft was all the plaintiff in error admitted to be due, yet the circumstances were not such as to indicate to the defendant in error that the draft was sent upon condition that its acceptance should operate as a discharge of the claim.

Since the trial court erred in the exclusion of the evidence above mentioned, the Appellate Court should have reversed the judgment and remanded the cause for another trial, unless it found the facts to be different from the facts as found by the trial court and incorporated such facts in its judgment.   The record of the Appellate Court contains no such finding, and its judgment will therefore be reversed and the cause remanded to that court for further consideration.   If, when the case comes again before that court, the facts are held by the Appellate Court to be different from the finding of the trial court, that court may, of course,

found its judgment upon such different findings, and the facts so found must be recited in the judgment; but if the facts are not found different from the finding of the trial court, the judgment should be reversed for the errors occurring on the trial and the cause remanded to the county court.

*Reversed and remanded.*