## Paul Oscar Steidtmann, Appellant, v. The Joseph Lay Company, Appellee.

### Gen. No. 15,391.

VERDICTS—*when not disturbed as against the evidence.* A verdict will not be set aside on review as against the evidence unless clearly and manifestly against its weight. (See Steidtmann v. Joseph Lay Co., 234 Ill. 84.)

Appeal from the County Court of Cook county; the Hon. DAVID T. SMILEY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1909. Affirmed. Opinion filed March 21, 1911. Rehearing denied April 5, 1911.

A. W. MARTIN and EDWARD H. S. MARTIN, for appellant.

EMERSON E. McGRIFF, FREDERICK S. McCLORY and LYMAN M. PAINE, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court.

This case is before this court for the third time. It has also received the attention of the Supreme Court. Steidtmann v. Joseph Lay Co., 234 Ill. 84. The Supreme Court in its opinion says:

"The plaintiff offered to prove ·by the depositions of witnesses taken in Hamburg, and the testimony of witnesses engaged in the import trade in Chicago, that the meaning of the expressions, 'laid down here at Ridgeville, Indiana,' 'free at Ridgeville, Indiana, U. S. duty unpaid,' 'f. o. b. Ridgeville, Indiana,' and 'free at Ridgeville, Indiana,' did not differ in meaning, and according to the common, universal and exclusive understanding of merchants and importers throughout the United States and at Hamburg, their meaning was that the seller was to pay the cost of packing and transportation to Ridgeville, Indiana, and that the expense of customs duty on the goods was to be borne by the

purchaser, without deduction from or credit on the purchase price of the goods as quoted. On objection by the defendant the court excluded the evidence.

"The testimony of witnesses is admissible to explain not only technical words of art or science, but words or phrases having a local meaning or a special meaning in a particular calling, trade, business or profession. Such evidence does not contradict or change the written instrument. The presumption is that such terms were used according to their understood meaning in the place or the business with reference to which the contract is made, and evidence as to such meaning is the only method of ascertaining the intention of the parties in entering into the agreement. * * * A person entering into a contract in the ordinary course of business is presumed to have done so in reference to any existing general usage or custom relating to such business. * * * And this is so whether he knew of the custom or not. * * * Such general custom and technical meaning of words may be proved without being specially pleaded. * * * The evidence offered should have been admitted."

By reference to the letters which appear in the opinion of the Supreme Court it will be seen that the plaintiff in error wrote to the defendant in error offering to sell it "Grand bassa 8½ cs. * * * pr. lb. c. i. f. New York, U. S. A., duty and consular invoice unpaid, against cas. less 1½% or three months' acceptance from date of b/l against documents."

The appellee stated in its letter that it was procuring a similar article, which is a fibre used for making brooms, at $200 per ton "f. o. b. cars at this town, Ridgeville, Indiana, with privilege of deduction of two per cent. for cash in ten days. * * * In order to start this matter so that it can be better understood, we will say we can take five tons of 14 inch and five tons of 16 inch grand bassa, per sample that you send, at $200 per ton laid down here at Ridgeville, Indiana, two per cent off for cash in ten days after arrival." In reply to this the appellant wrote: "In order to do business with you we will meet you and execute this

order at your limit of $200 per ton, free at Ridgeville, Indiana, U. S. duty unpaid, two per cent off for cash within ten days from arrival.''

It will be noticed that the offer made by appellant before the contract was entered into was on the basis of 8½¢ per cwt. at New York, or $170 per ton of 2,000 lbs. The freight from New York to Ridgeville was $5.60 per ton of 2,000 lbs., so that it appears from the record that the price delivered at Ridgeville, on the basis of the offer of the appellant, would be $175.60. It is hardly to be presumed that the appellee would have made a counter offer of $200 per ton at Ridgeville if it had supposed that it would be required in addition to pay the duty, which, as shown by the evidence, amounted to about $40 per ton. It is quite evident therefore that the purchaser expected, when its offer of $200 per ton was accepted, that that meant exactly what it said in its offer—''$200 per ton laid down at Ridgeville, Indiana,''—the duty being paid by the vendor. It may be true also that Steidtmann in accepting the offer and inserting in the acceptance ''duty unpaid,'' understood that the purchaser would pay the duty. It is fair to presume that he knew what the duty amounted to. If he did so understand, he must also have been aware that he would be receiving $200 per ton for the fibre at Ridgeville as against $170 at New York, which was the offer he made.

There was sharp controversy between the parties as to the meaning of the words ''duty unpaid'' in the letter from which the foregoing excerpt is taken. On the one side witnesses stated that it meant that the vendee should pay the duty in addition to the stipulated price. On the other hand it was asserted by the witnesses for the appellee that the words meant simply that the duty should be paid by the vendee but deducted from the purchase price. There is no contention between the parties but that under the terms of the contract the freight charges from New York or

Newport News to Ridgeville were to have been paid by the vendee and deducted from the purchase price. Witnesses for the appellee insist that the duty should be treated in the same way, that is, paid in the first instance by the vendee and then deducted, as was the freight, from the purchase price.

The jury found a verdict for the defendant on which judgment was entered.

We have carefully examined the abstract in the case and are of the opinion that the lower court committed no error in the admission or exclusion of testimony or in giving or refusing to give instructions tendered by the parties, which should cause a reversal.

*Judgment affirmed.*