UNITED STATES v. KERR et al.

(Circuit Court, D. Oregon. May 6, 1912.)

No. 3,717.

1. CUSTOMS AND USAGES (§ 15*)—USAGE AFFECTING CONSTRUCTION OF CONTRACT.

In an action by the United States to recover an alleged overpayment made to defendants for a quantity of oats under a contract requiring them to be delivered in sacks at Portland, Or., it being alleged that under the contract the weight of the sacks should have been deducted, which through mistake was not done, where the contract is silent on the subject, defendants may plead and prove as a defense a general custom and usage of the port and of all others on the Pacific Coast that in such cases the sacks are to be weighed and paid for.

[Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. §§ 30–33; Dec. Dig. § 15.*]

2. UNITED STATES (§ 88*)—RIGHTS OF ACTION BY—ESTOPPEL.

The United States may recover money paid through errors of its disbursing officers whether of fact or law, when it is equitably entitled to the same, and cannot be estopped to maintain an action therefor by any action of its officers.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 68; Dec. Dig. § 88.*

Estoppel against the United States, see note to State of Michigan v. Jackson, L. & S. R. Co., 16 C. C. A. 353.]

3. UNITED STATES (§ 130*)—ACTIONS BY—COUNTERCLAIM.

Under Rev. St. § 951 (U. S. Comp. St. 1901, p. 695), a counterclaim cannot be set up in an action by the United States, unless it is shown to have been presented to the accounting officers of the treasury, and been disallowed by them.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 118; Dec. Dig. § 130.*]

At Law. Action by the United States against Peter Kerr, Thomas Kerr, and P. W. Gifford, copartners trading as Kerr, Gifford & Co. On demurrer to answer. Sustained in part.

John McCourt, U. S. Atty., and Walter H. Evans, Asst. U. S. Atty. Williams, Wood & Linthicum, for defendants.

WOLVERTON, District Judge. This is an action by the government to recover for overpayment made by it to the defendants on account of the sale by the latter to the former of 2,000 tons of oats at $24.25 per ton, and 2,000 tons at $24.50 per ton; the contract providing that the oats are "to be free from dust and other impurities and to be double sacked with good, strong burlap sacks, not exceeding one hundred and fifty (150) pounds to the sack." The amount sought to be recovered is $595.22, which is the value of the sacks, computed in weight at the price the oats were contracted for per pound; it being the theory of the government that the oats were contracted for net, exclusive of the sacks. Payment was made on the basis of gross weight, including sacks. The defendants, after denying liability, set up what they denominate second, third, fourth, and fifth separate answers. By the second it is alleged:

"That it is both the general custom of the port of Portland and the general custom of the Pacific Coast that wheat, oats, and grain for exportation or shipment by vessel are bought and sold, and delivered and paid for at the gross weight, without any deduction for sacks; and that this custom was well known to the plaintiff, and said advertisements were made by the plaintiff, and bids were made by the defendants with full knowledge on both sides of the existence of said custom and in accordance therewith. And it was not intended by either the plaintiff or the defendants that there should be any deduction for the weight of sacks, but that oats should be paid for by gross weight, sacks included."

The third, after setting out the custom as above, alleges:

"That the value of the sacks required by the advertisement and actually sold and delivered by the defendants to the plaintiff was, to wit, $3,500, and defendants could not and would not have made the bid they did, which was accepted by the plaintiff, giving to the plaintiff said sacks without compensation, and allowing their weight to be deducted from the weight of the grain delivered. That to allow the plaintiff now to make deduction for said sacks, and at the same time to retain the sacks themselves, would be inequitable, and by reason of the foregoing the plaintiff is and ought to be estopped in the premises."

The fourth simply alleges:

"That the plaintiff voluntarily paid defendants fully, in accordance with the terms of the contract and without protest, objection or notice."

The fifth sets up a counterclaim for the value of the sacks, namely, $3,500. To each of these answers the government has interposed a demurrer, assigning as ground therefor that they do not state facts sufficient to constitute a cause of defense.

[1] I am of the opinion that the second further and separate answer is well pleaded. It is no doubt true that usage is never admissible to explain what is clear by the plain terms of the contract, nor can it be allowed to subvert the settled rules of law; that is to say, when settled rules of law are plainly applicable, usage will not be permitted to take the place of or supersede the law. It often occurs, however, that parties do contract with reference to a particular usage,

as they may contract with reference to the law existing at the time, and, when so contracting, the usage is to be read into the contract, and will be explanatory of its terms and stipulations. This is especially true where the terms of the contract itself are ambiguous, or their meaning is not obvious without reference to the usage. In the case of Robinson v. United States, 13 Wall. 363, 366 (20 L. Ed. 653), the court says:

"In the absence of an express direction on the subject, extrinsic evidence must of necessity be resorted to in order to find out which mode was adopted by the parties; and what extrinsic evidence is better to ascertain this than that of usage? If a person of a particular occupation in a certain place makes an agreement by virtue of which something is to be done in that place, and this is uniformly done in a certain way by persons of the same occupation in the same place, it is but reasonable to assume that the parties contracting about it, and specifying no manner of doing it different from the ordinary one, meant that the ordinary one and no other should be followed. Parties who contract on a subject-matter concerning which known usages prevail, by implication incorporate them into their agreements, if nothing is said to the contrary."

The facts of the case from which this quotation is made are in striking analogy to those of the case at bar, and to my mind this case is controlled by that in so far as it respects the second further and separate answer. The stipulation of the contract is that the oats are to be double sacked, and, if we refer to the usage pleaded, it would seem that the oats were sold in gross, the parties contracting with reference to such usage, so that the sacks in reality would be taken and paid for as oats pound by pound. It needs the aid of the custom properly and rightly to construe the contract, and, without it, it would be impossible to arrive at the intention of the parties with reference to the subject-matter.

[2] The third further and separate answer is pleaded as an estoppel. This may be disposed of along with the fourth. It is a rule of law, well established, that the government may recover moneys paid through errors of its disbursing officers, as much where the error is one of law as of fact, provided only the moneys belong to the United States ex æquo et bono. United States v. Saunders, 79 Fed. 407, 24 C. C. A. 649. This doctrine is well supported by the case of Wisconsin Central Railroad v. United States, 164 U. S. 190, 17 Sup. Ct. 45, 41 L. Ed. 399. It would appear therefrom that an estoppel of the nature here attempted to be set up could not be pleaded against the government; nor would the settlement by the government officers, acting either through or under a mistake of law or fact, whereby payments have been made, preclude the government from recovering for overpayment.

[3] The fifth further and separate answer is not well pleaded, because it does not appear therefrom that the claim has been presented to the proper accounting officer for his examination, and to have been by him disallowed. This is made a condition precedent to recovery against the government, even by counterclaim, under section 951 of the Revised Statutes (U. S. Comp. St. 1901, p. 695). See, also, United States v. Gilmore, 74 U. S. 491, 19 L. Ed. 282; Watkins v. United States, 76 U. S. 759, 764, 19 L. Ed. 820; United States v. Patrick,

73 Fed. 800, 20 C. C. A. 11; Yates v. United States, 90 Fed. 57, 32 C. C. A. 507.

The demurrer will therefore be overruled as to the second further and separate answer, and sustained as to the other three.