OSWEGO FALLS PULP & PAPER COMPANY, Respondent, *v.* STECHER LITHOGRAPHIC COMPANY, Appellant.

Contract — action for breach — measure of damages — when manufacturer not bound to continue performance — evidence of trade usage and custom.

1. In an action to recover for breach of an agreement by which plaintiff was to manufacture and deliver paper board at certain times, for specified purposes and of the quantity specified, and the defendant undertook to purchase the manufactured article and pay

Oswego Falls P. & P. Co. *v.* Stecher Lith. Co. **99**

1915.]            Statement of case.            [215 N. Y.]

for the same to the extent disclosed in the contract, the measure of damages is the difference between the contract price the defendant agreed to pay and the actual cost to the plaintiff of producing the article in question — in other words, the profit which would accrue to plaintiff had the contract been fully executed. The fact that plaintiff's mill was continually in operation does not deprive the plaintiff of the value of its contract, a breach of which was caused by defendant.

2. Where the purchaser has refused to perform before the goods are manufactured, the manufacturer is not bound to continue performance; but can after the breach recover the profit which he would have made.

3. Evidence on the part of the plaintiff to show that there was a trade usage as to variation and thickness of paper was admissible, not for the purpose of contradicting the express terms of the contract, but rather to show a trade usage and custom in the manufacture of goods.

4. Authorities on the question of damages for breach of contract collated and considered.

*Oswego Falls Pulp & Paper Co.* v. *Stecher Lithographic Co.,* 155 App. Div. 941, affirmed.

(Argued March 18, 1915; decided May 25, 1915.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered April 3, 1913, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Udelle Bartlett* for appellant. The trial court adopted and submitted to the jury an erroneous measure of damages. (*Meyer Bros. Drug Co.* v. *McKinney,* 137 App. Div. 541; 203 N. Y. 533; *Isaacs* v. *Terry & Tench Co.,* 125 App. Div. 532; *Stecker* v. *Weaver C. & C. Co.,* 116 App. Div. 772; *Saxe* v. *Penokee Lumber Co.,* 159 N. Y. 371; *Parsons* v. *Sutton,* 66 N. Y. 98; *Wright* v. *Bank of Metropolis,* 110 N. Y. 237; *Hamilton* v. *McPherson,* 28 N. Y. 72; *Jenks* v. *Quinn,* 137 N. Y. 223.) The trial

**100**   Oswego Falls P. & P. Co. *v.* Stecher Lith. Co.

[215 N. Y.]          Opinion, per Hogan, J.          [May,

court committed various reversible errors in its charge and in refusals to charge as requested. (*Bierman* v. *City Mills*, 151 N. Y. 482; *Carleton* v. *Lombard, Ayres & Co.*, 149 N. Y. 137; *Edwards* v. *Stewart*, 15 Barb. 67; *Bellinger* v. *Craigue*, 31 Barb. 534; *Blair* v. *Bartlett*, 75 N. Y. 150; *Davis* v. *Talcott*, 12 N. Y. 184; *Hopper* v. *Sage*, 112 N. Y. 535; *Connell* v. *Averill*, 8 App. Div. 527; *Underwood* v. *Greenwich Ins. Co.*, 161 N. Y. 424; *Wadsworth* v. *Allcott*, 6 N. Y. 64; *Wheeler* v. *Newbould*, 16 N. Y. 392; *Silberman* v. *Clark*, 96 N. Y. 524.)

*D. Raymond Cobb* and *Charles W. Tooke* for respondent. The measure of damages submitted to the jury was correct. (*Oswego F. P. & P. Co.* v. *Stecher Lith. Co.*, 146 App. Div. 241; *Meyer Brothers Drug Co.* v. *McKinney*, 137 App. Div. 541; 203 N. Y. 233; *Isaacs* v. *Terry & Tench Co.*, 125 App. Div. 532; *Parsons* v. *Loucks*, 48 N. Y. 17; *Masterton* v. *Mayor, etc.*, 7 Hill, 61; *Kelso* v. *Marshall*, 24 App. Div. 128; *Haddam Granite Co.* v. *B. H. R. R. Co.*, 186 N. Y. 247; *Dryfoos* v. *Uhl*, 69 App. Div. 118; *Hickley* v. *Pittsburg Steel Co.*, 121 U. S. 264.) The charge of the trial judge was full, adequate, and without error. (*Whitney* v. *Hop Bitters Mfg. Co.*, 2 N. Y. Supp. 438; 121 N. Y. 682; *Atkinson* v. *Truesdell*, 127 N. Y. 230; *Newhall* v. *Appleton*, 114 N. Y. 140.)

Hogan, J. The plaintiff, a domestic corporation, engaged in the manufacture of paper, sought in this action to recover damages by reason of an alleged breach of contract on the part of the defendant, a domestic corporation engaged in the lithographic business, and also in the manufacture of paper boxes used for putting up prepared breakfast foods. The contract between the parties is evidenced by two letters, the material portions of which follow:

October 10th, 1907, the plaintiff wrote to the defendant:

" Conforming to the request of Mr. Conly I am writing to say that we will take your order for 1,000 tons Egg-O-See stock with chip back for delivery during the calendar year of 1908 at the proximate rate of one car load per week at a price of $42.00 per ton F. O. B. Rochester, terms 30 days less 3 per cent," to which defendant on October 11th, replied:

"Referring to your telephone conversation of to-day, we have decided to accept proposition which is as follows:

"You are to furnish us Fifty-two 20 ton carloads of Bleached Manila Lined Chip, same grade as you furnished us prior to Oct. 1906, to be delivered one car per week, starting Jan. 1st., 1908. Price to be $42.00 per ton f. o. b. Rochester — Terms 30 days less 3 per cent."

"Egg-O-See" is a breakfast food. The paper board to be manufactured and furnished the defendant by plaintiff was to be used by the defendant in making boxes for that article of food. Like contracts had been in force between the parties for several years prior to the contract in question. After the delivery by plaintiff of a portion of the paper board, defendant declined to order or receive any additional quantity. Plaintiff had a verdict upon which judgment was entered, and subsequently on appeal was unanimously affirmed by the Appellate Division.

The first alleged error claimed by counsel for the appellant is that the trial justice adopted and submitted to the jury an erroneous measure of damages. The trial justice held that the measure of damages was the difference between the contract price the defendant agreed to pay and the actual cost of production to the plaintiff of producing the article in question — in other words, the profit which would accrue to plaintiff had the contract been fully executed. Proper exceptions were taken by counsel for defendant to the admission of evidence under the ruling of the trial justice and to the charge to the jury upon the measure of damages.

It is alleged on behalf of the appellant that the rule adopted upon the trial was erroneous; that the only damage which plaintiff could suffer would arise, *first*, by plaintiff actually manufacturing sufficient paper board to constitute forty-one carloads, the quantity not ordered under the contract at the time of the breach by defendant, disposing of the same in the market and then recovering the difference between the market value received for the same and the contract price of $42.00 per ton, or, *secondly*, if plaintiff did not manufacture the article because of failure of defendant to order the same, but used its mill in the manufacture of other goods during such time as it would have required to manufacture forty-one carloads of paper board, had it been ordered, then the measure of damages would be the difference between the profit plaintiff made on the goods manufactured during the time required to make forty-one carloads of paper board and the contract price.

We are of opinion that the rule adopted by the trial justice was applicable to the facts in this case. The agreement on the part of the plaintiff was to manufacture and deliver paper board at certain times for specified purposes and of the quantity specified; the defendant undertook to purchase the manufactured article and pay for the same to the extent disclosed in the contract. Upon the execution of that agreement, each of the parties became possessed of a property right in the contract. Upon a breach of the same by the defendant, the plaintiff was denied the right to a performance upon its part, and for such breach a liability existed against the defendant. The question then to be determined was, what was the value of the contract measured by the opportunity denied to the plaintiff. In considering the value of an executory contract like unto the one in this case, such benefits as the parties had in mind at the time of the making of the same is of some aid in formulating a rule of damages arising from a breach thereof.

By the terms of the contract between the parties the plaintiff was to manufacture and deliver fifty-two 20-ton carloads of paper board, one car per week, commencing January 1, 1908, at a stated price per ton.   The contract covered a period of one year.   That there was a value in such contract to each of the parties thereto cannot be questioned.   There was a binding obligation on the part of the plaintiff to manufacture and deliver the goods irrespective of an increase or decrease in the price of such goods, the materials entering into the same or the labor expense of manufacture.   In the event of an increase in the value of the product, the value of the contract to plaintiff would, of necessity, have been diminished, while the value of the same contract to defendant would have been proportionately increased. In this instance the market declined materially early in the year 1908.   Thus the contract to the plaintiff increased in pecuniary value, while the value of the same to the defendant decreased, consequently upon a breach of the contract by defendant the plaintiff was deprived of the profits it would have made had the contract been fully performed, *i. e.*, the difference between the contract price and the amount which plaintiff established with reasonably certainty would have been the cost to perform the contract.   (*Masterton* v. *Mayor, etc., of Brooklyn,* 7 Hill, 61; *Meyer Brothers Drug Co.* v. *McKinney,* 137 App. Div. 541; affirmed, 203 N. Y. 533; *Ware Brothers Company* v. *Cortland C. & C. Co.,* 192 N. Y. 439, 443; *Hinckley* v. *Pittsburgh B. S. Co.,* 121 U. S. 264, 274; *Matter of Vic. Mill, Limited,* L. R. [1913] 1 Ch. 183; appeal dismissed Id. 465; *Cameron* v. *White,* 74 Wis. 425; Page on Contracts, vol. 3, § 1591.)

In *Ware Bros. Co.* v. *Cortland C. & C. Co.* (192 N. Y. 439), cited *supra,* the defendant entered into a contract with the plaintiff wherein it agreed to pay plaintiff the sum of $350 for publishing its advertisement once a month for twelve months in a monthly publication.   The defend-

104 Oswego Falls P. & P. Co. *v.* Stecher Lith. Co.

[215 N. Y.] Opinion, per Hogan, J. [May,

ant breached the contract. Plaintiff placed the advertisement for twelve months and then brought suit to recover the contract price, proved the contract, performance and rested its case. Defendant proved cancellation of the contract and rested. The complaint was dismissed on the ground that the contract price was not the measure of damages. The judgment entered upon the dismissal was affirmed (119 App. Div. 928); upon appeal to this court the judgment was reversed and a new trial granted. This court said, Haight, J., writing:

"The contract in some respects differs from that of the ordinary employment of servants for specified terms, but we see no reason why the rule pertaining to such contracts should not apply and control in the disposition of this contract."

The court further held that applying the rule stated the court below erred in its conclusion of law that there was no evidence showing that there were damages occasioned by the revocation of the contract by the defendant, for the contract price "would *prima facie* be the measure of damages, unless the defendant should show the amount that should be deducted therefrom by reason of its revocation of the contract.

"In reaching the result above indicated, we wish it understood that it is not our purpose to extend the rule beyond the facts found in this case. *Nor is it our purpose to limit or impair the rule that, in a breach of an ordinary contract for the manufacture of an article or the supplying of goods or merchandise*, including that which is known as ordinary job printing, *the damage is the difference between the contract price and the cost of the goods, merchandise or manufactured article*, in which the burden of showing the damages rests on the plaintiff * * *." (p. 442.)

Upon a retrial of the action the trial justice directed a verdict for the plaintiff, which upon appeal to the Appellate Division was reversed and a new trial granted (148

App. Div. 546), upon the ground that it was the duty of plaintiff to show that it had made some reasonable effort to fill the space, rather than to continue the advertisement. From such judgment of reversal the plaintiff again appealed to this court where the judgment of the Appellate Division was reversed and the judgment of the Trial Term affirmed.

Judge CHASE, writing for this court, referred to the opinion of Judge HAIGHT upon the first appeal, and quoted therefrom the language above quoted. (*Ware Brothers Co.* v. *Cortland C. & C. Co.*, 210 N. Y. 122.)

In *Meyer Brothers Drug Co.* v. *McKinney* (137 App. Div. 541, 545) Mr. Justice HOUGHTON, writing for the court, after a review of the facts in that case, said: ·

"Where, therefore, a contract is made to manufacture and deliver goods at a certain price, and the purchaser breaches his contract before the goods are manufactured, the only means of ascertaining the loss which the manufacturer and seller sustains is to ascertain what it would cost him to have fulfilled his contract and deduct that from what the purchaser agreed to pay, and in that way, and in that way only, can he be reimbursed for his loss. He is not obliged after breach to manufacture and place his goods upon the market with attendant risk and expense of selling and then charge his purchaser with the difference between what he gets and what the purchaser agreed to pay. The purchaser having refused to perform before the goods are manufactured, the manufacturer is not bound to continue performance, but can stop where he finds himself at the breach and recover the profit which he would have made (citing *Todd* v. *Gamble*, 148 N. Y. 382; *McMaster* v. *State of New York*, 108 id. 542, 556; *Masterton* v. *Mayor, etc., of Brooklyn*, 7 Hill, 61; *Lehmaier* v. *Standard Specialty & Tube Co.*, 123 App. Div. 431; *Isaacs* v. *Terry & Tench Co.*, 125 id. 532; *Hinckley* v. *Pittsburgh B. Steel Co.*, 121 U. S. 264)."

Upon appeal to this court, the judgment of the Appellate Division in this case was affirmed (203 N. Y. 533).

The cases cited as sustaining a contrary rule are distinguishable from the case at bar. In *Stecker* v. *Weaver Coal & Coke Co.* (116 App. Div. 772) the action was brought to recover damages for a breach of contract for the sale and purchase of a quantity of coal. *Haddam Granite Co., Inc.,* v. *Brooklyn Heights R. R. Co.* (186 N. Y. 247) involved a contract for the purchase and delivery of granite blocks, and was considered by this court as simply a contract for the purchase and sale of an article of merchandise, and in the event it had a general market value at the time and place of delivery called for by the contract the measure of damages would be the difference between the market value and the contract price, citing *Todd* v. *Gamble* in support thereof.

*Saxe* v. *Penokee Lumber Co.* (159 N. Y. 371) was a contract for the sale of lumber, which was available in the market.

*Todd* v. *Gamble* (148 N. Y. *supra*) was a case where the plaintiffs were manufacturers of chemicals, and contracted to furnish defendant with different quantities of silicate of soda they would require to use in their factory within one year from date. The defendant breached the contract and purchased silicate of soda from other dealers. The trial justice charged the jury that if there was no market value for the article the plaintiffs were entitled to recover the difference between the cost of production and the contract price. That instruction was approved by this court. The record discloses that after the breach of contract by the defendant, plaintiffs ceased to manufacture under the contract. Judge GRAY, writing for this court, said (p. 384): "The general rule for the measure of damages, in the case of a breach by a vendee in the contract for the sale of an article of merchandise at a fixed price, is the difference between the contract price

and the market value of the article, on the day and at the place of delivery."

And on page 385: " To justify a departure from this general rule, the facts must take the case out of the ordinary and, if there is no such standard as a market value, the measure of the plaintiff's damage may be arrived at, in a case like the present one, by ascertaining the difference between the contract price and the cost of production and delivery." Thereupon Judge GRAY reviewed the facts in that case so as to justify a departure from the market price rule, holding that the evidence was insufficient to warrant a finding under the rule that there was a general market for the article in which it could be disposed of in such large quantities in view of the perishable nature of the same.

In the case at bar the defendant was required to furnish specifications as to the sizes of the paper board to be manufactured. The plaintiff was not required to manufacture by chance a size of paper board and market the same. Had it done so defendant might assert that it would have specified entirely different sizes, and thus we would have added to the difficulties now surrounding the determination of the measure of damages new and additional questions. The size of the paper board was by the contract to be fixed and ordered by the defendant; how then can it be heard to say that the plaintiff was required to manufacture paper board after a breach of contract by it of one or different sizes to the extent of forty-one 20-ton carload lots, and market the same before establishing its right to damages. While it is a fact that plaintiff's mill was continually in operation, that fact does not deprive the plaintiff of the value of its contract, a breach of which was caused by defendant.

The second point urged by appellant is that the trial court committed reversible error in a refusal to charge that if the defects complained of were such that they could not be discovered by defendant until after the board was made up into " Egg-O-See " boxes, then the accept-

ance was not a waiver of any breach of contract on the part of the plaintiff in failing to furnish proper and suitable stock. The justice said he would charge that as an abstract proposition of law, but it was inapplicable to this case for the reason that so far as the goods furnished are concerned they had been accepted and paid for, and there was no claim to recover damages because of the breach of implied warranty, but as to future installments the rule stated was not applicable by reason of the fact that the paper was not manufactured or delivered.

I am of the opinion that the charge of the trial justice was free from error.

Counsel for defendant further argues that it was error for the trial court to allow the plaintiff to prove a custom of the trade with reference to the weight of paper. Suffice it to say, that it was permissible for the plaintiff to show that there was a trade usage as to the variation and thickness of paper, which in this case was merely nominal; in other words, to show that it was practically impossible to have such a quantity of cardboard without a variation in some slight degree. Such evidence is admissible, not for the purpose of contradicting the express terms of the contract, but rather to show a trade usage and custom in the manufacture of goods. (*Newhall* v. *Appleton*, 114 N. Y. 140; *Whitney* v. *Hop Bitters Mfg. Co.*, 18 N. Y. St. Repr. 891; affirmed, 121 N. Y. 682; *Atkinson* v. *Truesdell*, 127 N. Y. 230.)

The judgment should be affirmed, with costs.

Cuddeback, Miller, Cardozo and Seabury, JJ., concur; Collin, J., dissents; Willard Bartlett, Ch. J., not voting.

Judgment affirmed.