### LAMBORN et al. v. BLATTNER. *

(Circuit Court of Appeals, Fifth Circuit.
May 1, 1925. Rehearing Denied
July 2, 1925.)

No. 4453.

1. **Customs and usages ⟨⟩21—Evidence held to make question for jury of barrel of sugar being a certain number of pounds under customs of trade.**

Evidence, in action on contract of sale of a certain number of barrels of fine granulated

*Certiorari denied 46 S. Ct. 24, 69 L. Ed. —.

sugar at a certain price per pound, *held* to make a question for the jury of the standard barrel, under custom of the sugar business, being 350 pounds, though individual barrels would vary from a few pounds less to a few pounds more than that.

2. **Customs and usages ⟨⟩13—Custom need not be recited in contract.**

Where words of a contract have a certain meaning under custom of trade, such custom need not be recited therein, but the law will consider it as written therein.

3. **Trial ⟨⟩143—Question on which evidence is conflicting for jury.**

A question of fact on which the evidence is conflicting should be submitted to the jury.

4. **Sales ⟨⟩153—Actual tender unnecessary, in view of declaration that it would be refused.**

Where buyer advised seller that he would refuse to receive goods because he considered that there was no contract, he cannot afterwards set up want of tender.

In Error to the District Court of the United States for the Southern District of Florida; Rhydon M. Call, Judge.

Action by A. H. Lamborn and others, doing business as Lamborn & Co., against S. Blattner, doing business as the United Produce Company. Judgment for defendant, and plaintiffs bring error. Reversed and remanded.

W. T. Stockton, Herman Ulmer, and Wm. M. Toomer, all of Jacksonville, Fla., and A. B. Lovett, of Savannah, Ga. (Hitch, Denmark & Lovett, of Savannah, Ga., on the brief), for plaintiffs in error.

George C. Bedell, of Jacksonville, Fla. (D. G. Haley and Frank J. Heintz, both of Jacksonville, Fla., on the brief), for defendant in error.

Before WALKER and BRYAN, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge. Plaintiff, a copartnership whose members are residents and citizens of states other than Florida, brought this suit to recover of defendant, a citizen of the latter state, the sum of $35,000 as damages alleged to have been suffered by the breach of a contract to accept delivery of some 533 barrels of fine granulated sugar, being the remainder of a total of 600 barrels sold under three separate contracts. The contracts all bear the same date, and were for 200, 300 and 100 barrels, respectively, and, as their terms are otherwise identical, we quote the first, as follows:

"New York, N. Y., April 30, 1920.

"Sold by Lamborn & Company, New York, for the account of whom it may concern.

Sold to United Produce Co., Jacksonville, Fla., 200 barrels standard fine granulated sugar, on the basis of 25.50 cents per pound, f. o. b. Savannah refinery, Port Wentworth, Ga., for fine granulated. Shipments to be made some time during the period between July 15 and October 1, 1920, but shipping is to be at sellers' option, subject to delay, if any,

"Terms: Cash before delivery, less 2 per cent., or cash in seven days, less 2 per cent. Terms and withdrawals subject to the approval of the sellers' credit department. Sellers to furnish sugars packed in barrels or bags, but sellers have option of shipping no more than 50 per cent. of contract in 100 pound bags. Sellers will furnish 2, 5, 10, and 25 pound bags at the ruling differential above fine granulated basis, if desired by the trade, provided these packages are obtainable, but do not guarantee to furnish said packages.

"Sellers will not be responsible under this contract if shipment is prevented or delayed by war conditions, strikes, labor difficulties, accidents, embargoes, regulations or restrictions imposed by any government or governmental agencies, fire, or any other cause beyond the sellers' control, or if the supply of raw material of the refinery manufacturing the sugar described in this agreement shall be interrupted by any such cause. Option of routing is reserved by sellers. Delivery will be considered complete on receipt of goods by carrier.

"This purchase to be invoiced and paid for at contract price. No allowances whatever for declines in market; if shipment is made freight prepaid, the ruling prepaid freight basis to destination must be furnished when called for by sellers. All additional import duties, excise or other taxes, hereafter levied on the raw or refined sugar necessary to fill this contract at buyer's expense, in addition to price specified.

"Kindly sign and return one copy confirming purchase.

"Lamborn & Company,
"Savannah, Ga., Brokers.

"This contract is accepted: [Signed] United Pro. Co., Buyer, by S. Blattner. Lamborn & Company, Seller, New York, N. Y., by G. G. Bond."

The petition alleged that defendant accepted and paid for 67 barrels of the sugar at the agreed price under the terms of the first contract above quoted, but that thereafter, notwithstanding tender in pursuance of the said agreements of the remainder, defendant failed and refused to receive the said sugar, and it was sold for the best price obtainable at a loss in the amount claimed as damages. Plaintiff alleged that, according to custom of the sugar business, a standard barrel of fine granulated sugar was understood to contain 350 pounds, but that as a matter of common knowledge and consent the weights would vary from 325 to 375 pounds.

Defendant filed original and amended pleas in defense. In the first he denied that within the period provided by the contract plaintiff was ready, willing, and able to deliver the sugar as alleged, or that there existed any custom or general usage by which 350 pounds was considered as a standard barrel of fine granulated sugar. In the amended pleas defendant averred that the 67 barrels of sugar accepted by him weighed 23,668 pounds, or was more than one-third of the first order of 200 barrels as alleged by plaintiff, and that the allegation that the sugar was shipped in accordance with the contract was untrue, and otherwise that the allegations of the petition were untrue. In this state of the record the case was tried before a jury, and at the close of plaintiff's evidence defendant requested the court to instruct a verdict in his favor but the request was denied. Thereafter, when the entire evidence was in, plaintiff likewise asked for an instructed verdict for the sum of $21,625.43, with interest at 7 per cent. from October 26, 1920, or a total of $27,020.38. This request was also refused, but upon a second similar motion by defendant the court instructed a verdict in his favor, using the following language:

"In this case, gentlemen, as I understand the issues, the declaration necessarily made, that barrel must contain a certain number of pounds of sugar; otherwise, the declaration would be amenable to the statute of frauds, the contract being for barrels, and the payment to be made per pound, the contract not specifying what those barrels should contain; that therefore it was necessary, before the plaintiffs could recover for the breach of and failure to proceed and take the number of barrels of sugar mentioned in the contract, the declaration should allege that these barrels, by common custom of the trade, should contain a certain number of pounds. The declaration alleged that. That was an issue in the case, and upon that issue depends the recovery of the plaintiff. Should they fail to show such custom in the trade, they could not recover. The contract would be no contract at all under the stat-

ute of frauds. That having been in writing, it could not be helped by oral testimony.

"Therefore it seems to me the main issue in this case, the issue first to be decided, is whether there is this general custom in the sugar trade that a barrel of sugar, of this particular grade, meant 350 pounds, and that all in that trade knew and understood that; that it was a generally known custom. You are therefore bound by the contract. Now, as I say, that seems to me to be the issue, the main issue upon which the plaintiff's recovery depends. Now, as I understand this testimony, all of it, I think without contradiction, is to the effect that that was understood; that the barrels were to contain 350 pounds. I mean, all the testimony of the plaintiff, except the testimony of some of the witnesses for the defendant, who said 3 bags, instead of 3½, to the barrel. But the testimony was very clear that they understood that this barrel of sugar was to be 350 pounds, but that it varied in the deliveries; not that each barrel should weigh 350 pounds, but that it varied in deliveries of sugar in the barrel; that those barrels could vary from 330 pounds to 375, and one witness testified as much as 390, in one instance.

"Now the question for the court to decide, it seems to me, is whether the plaintiff has sustained that issue, that there was this general, universal custom in the sugar trade; and under this testimony I don't think that the plaintiff has maintained that issue. Therefore I think I will have to give the requested instruction for the defendant. I do not think it is necessary to make any minute entry when I give that, because I note your exception to that charge. There is no use to incumber the record with these other charges. And the plaintiffs did then and there except said ruling, to which exception was duly noted by the court. And thereupon the court did instruct and charge the jury as follows:

"Gentlemen of the jury, in this case the right of the plaintiff to recover depends upon the establishment of a universal custom in the sugar trade. Under the view of the court, the testimony does not sustain that allegation in the declaration. It is therefore the duty of the jury to find a verdict for the defendant; that verdict has been prepared, and one of you gentlemen just come up and sign it.

"To the giving of which instruction the plaintiff then and there excepted, which exception was duly noted by the court. And

thereupon the jury did render a verdict for the defendant as appears of record."

[1] Plaintiff alleged, and the proof administered by it abundantly showed, that by the use of the word "barrel" the trade in the locality in which these contracts were made generally understood the term to mean 350 pounds of fine granulated sugar, but that, inasmuch as it was impossible from a practical standpoint to have each barrel contain exactly that weight, the trade generally accepted in fulfillment of agreements of this nature, barrels ranging in weights from 325 to 375 pounds. The reasons given for this are climatic conditions and the unavoidable variance in actual size of the manufactured barrels, resulting from different sizes and shapes of the staves. However, as just stated, these conditions were well understood by the trade, and sugar was uniformly accepted in barrels within the variations mentioned. In other words, each barrel was supposed to contain on an average 3½ sacks of 100 pounds each. This idea is supported by a large number of witnesses introduced by plaintiff, who were experienced dealers in the business.

On the other hand, the witnesses of the defendant asserted that in their experience, and according to their understanding of the practice, the average barrel of sugar was supposed to contain 333 pounds, though we are impressed that they were not so familiar with the customs of the trade at the time these contracts were made as were the witnesses of plaintiff, and besides some of them were shown to have had some connection with the particular contracts, or to have had suits of their own by the plaintiff similar to the one now under consideration. Yet each and all of them corroborated the testimony of plaintiff's witnesses to the extent of saying the weight of the barrels of any particular shipment would vary from a few pounds up to 25, 30, 40, and perhaps 50 pounds. So that, in our opinion, the only disputed question of fact that could have been considered as affecting plaintiff's right to recover was as to the standard barrel—that is, whether it was 333 pounds, or 350 pounds— and this issue, we think, should have been submitted to the jury.

[2] Ordinarily, of course, if a contract is uncertain in any material particular, it cannot be enforced, for the reason that the minds of the parties have not sufficiently met to form a legal tie; but, where it is shown that the custom of the trade involving any particular class of agreements is

such that the parties fully understand the meaning of the terms used, it is unnecessary that this custom be specifically recited in the contract, for the law will consider it as written therein. Small v. American Sugar Refining Co., No. 101, 45 S. Ct. 295, 69 L. Ed. ——, October term, 1924, United States Supreme Court, decided March 2, 1925; Small v. Lamborn & Co., No. 100, 45 S. Ct. 300, 69 L. Ed. ——, also decided by the Supreme Court on the same date; Kay & Sons v. Alabama Cotton Co., 211 Ala. 454, 100 So. 863; Davis v. Adams, 18 Ala. 264; Berry v. Nall, 54 Ala. 446; Smith v. Wilson Merc. Co., 6 Ala. App. 171, 60 So. 484; Mutual Chemical Co. v. Marden, 235 N. Y. 145, 139 N. E. 221; Cabinet Co. v. Herriman, 7 Ind. App. 462, 34 N. E. 579; Covington Co. v. Ferguson, 204 Ala. 192, 85 So. 726; Warner-Godfrey Co. v. Sheinman, 273 Pa. 105, 116 A. 671; United States v. Kerr (C. C.) 196 F. 503; Robinson v. United States, 13 Wall. 363, 20 L. Ed. 653; Gumbinsky v. Smalley, 203 App. Div. 661, 197 N. Y. S. 530; Guillon v. Earnshaw, 169 Pa. 463, 32 A. 545; Oswego Falls Co. v. Stecher, 215 N. Y. 98, 109 N. E. 92, L. R. A. 1916B, 1257; Leavitt v. Kennicott, 157 Ill. 235, 41 N. E. 737; Dalton v. Daniels, 2 Hilt. (N. Y.) 472; Conner v. Robinson, 2 Hill (S. C.) 354; Miller v. Stevens, 100 Mass. 519, 1 Am. Rep. 139, 97 Am. Dec. 123; Smith v. Wilson, (Eng.) 3 Barn. & Adolph, 728; Soutier v. Kellerman, 18 Mo. 509; Kunglig v. Dexter (D. C.) 299 F. 991; Brawley v. United States, 96 U. S. 168, 24 L. Ed. 622; Meincke v. Falk, 61 Wis. 623, 21 N. W. 785, 50 Am. Rep. 157.

The evidence shows that defendant accepted 67 barrels of the first order of 200, in which the weights ran approximately the same as in the other shipments, without making any complaint thereon, and this is a rather strong circumstance showing the extent to which the custom was understood by him. For the courts to hold that dealers engaged in business, such as the sugar industry, cotton trade, etc., cannot make contracts of the kind that were used in this case, with the knowledge that the law would consider as written therein the customs and practices of the trade, would most seriously handicap a very important part of the business of the country. As an illustration, we think we may take cognizance of the fact that in the cotton business the standard bale is understood to weigh 500 pounds, but that the individual bales may vary in weight from 400 to 600 pounds. Nevertheless they are accepted under such agreements, where the cotton is described only as so many bales; it being the universal practice, as in the sugar business, to accept and pay for the commodity at so much per pound, the purchaser thereby receiving and paying only for what he gets.

[3] At most the testimony offered by defendant could only be said to have conflicted with that submitted by plaintiff on the question of the custom and usage as to the weight of a standard barrel of fine granulated sugar, and under settled jurisprudence this matter should have been submitted to the jury. 17 C. J. 525; McLanahan v. Universal Insurance Co., 1 Pet. 170, 7 L. Ed. 98; Rochford v. Pennsylvania Co. (6th Circuit) 174 F. 81, 98 C. C. A. 105; Hart v. N. P. R. Co. (8th Circuit) 196 F. 180, 116 C. C. A. 12; Sloan v. Herndon (5th Circuit) 213 F. 779, 130 C. C. A. 340; At. I. & C. Corp. v. Van (C. C. A. 6th Circuit) 276 F. 646; Toledo R. R. v. Howe (6th Circuit) 191 F. 776, 112 C. C. A. 262; Shadoan v. C., N. O. & T. P. R. Co. (6th Circuit) 220 F. 68, 135 C. C. A. 636.

[4] There is some contention made upon the score that there was no proper tender of the balance of the sugar under the contract, but it is shown that the defendant advised the plaintiff both by wire and by letter that he would refuse to receive it, because he considered there was no contract, and, having urged this alone as a basis for refusal to comply with his agreements, he cannot now be heard to set up the want of tender. Armour & Co. v. Sherburne (C. C. A. 1st Circuit) 300 F. 81; Lamborn & Co. v. Log Cabin Products Co. (D. C. Minn.), 291 F. 435; Lagerloef Trading Co. v. American Paper Co. (C. C. A. 7th Circuit), 291 F. 947; Godchaux Sugars v. Meridian Wholesale Co. (C. C. A.), 289 F. 359. As a matter of fact, a considerable portion of the sugar was shipped, and refused upon the ground that there was no valid contract.

Our conclusion is that the judgment of the lower court should be reversed, and this case remanded, to be submitted to another jury upon the disputed question of fact hereinafter mentioned; and it is so ordered.