## MARSHALL MONTGOMERY *v.* WILLIAM RICKER.

*Statute of Frauds.* *Contract.* *Rescission.* *Trover.*

Under a parol contract to furnish a bill of "square edged" lumber for a barn, the plaintiff had a portion of it sawed and drawn and unloaded on a common near the defendant's house, as directed by the latter; the defendant's men assisting in unloading it. As it was unloaded the defendant discovered that some of it was "wany edged" as he claimed, and sent word to the plaintiff that he would not accept the "wany edged" lumber. The lumber had not been measured by the parties, and not at all except by the sawyer, who marked each piece in the usual way of sawyers, and no payment had been made on it, and none of it had been used. *Held,* that the plaintiff then had the right to rescind the contract, and having notified the defendant that he did rescind it, and that he must not meddle with the lumber, the defendant is liable in trover for having taken and used it.

A mistake or misunderstanding of the parties as to the meaning of the stipulation that the lumber should be "square edged" would not alone give either party a right to rescind. But the facts detailed do not show a delivery and acceptance of any part of the lumber, and the original contract was within the statute of frauds.

TROVER for a quantity of lumber. Plea, the general issue, and trial by the court, June term, 1870, STEELE, J., presiding. The court found the following facts:

About the middle of January, 1869, the defendant, who was intending to build a barn, presented to plaintiff a bill of the lumber he would require, and made a contract with plaintiff to furnish him that bill, in all some over 20,000 feet, at $12 per thousand, to be delivered the defendant on or before the 1st of March then next. The contract was not reduced to writing and no earnest money was paid. The bill included dimension stuff, boards and plank, and these different kinds of lumber were worth different prices, but the parties agreed on $12 per thousand as the price for the whole bill. Nothing was said how or when the lumber should be measured. It was agreed that the boards and plank should be square edged. Owing to the deep snows the plaintiff failed to deliver the lumber as agreed, and an extension of time was given him by defendant, the plaintiff saying that he thought he could deliver the lumber as fast as defendant's workmen would need it.

The plaintiff got out the logs from his own land and drew them to a saw-mill owned by another party, to have the bill sawed out. As the lumber was sawed, each stick, board or plank, was, according to the usual custom of sawyers, marked by the sawyers,

with figures indicating the number of feet it contained, as measured by the sawyer.

Before the defendant's workmen commenced on the barn (and whether they ever commenced or not did not appear,) the plaintiff sent his teamster to the defendant's with several loads of the lumber. These loads included some of the dimension stuff, some of the boards, and some of the plank, but more of the dimension stuff than of the other kinds. The first loads contained nothing but dimension stuff. The teamster unloaded the lumber on a common in front of and near the defendant's house, by defendant's direction. The plaintiff's teamster thus drew and unloaded, in all, 6,339 feet, of which 2,343 feet were boards and plank, and the rest dimension stuff. The defendant, or his men, assisted in unloading each load of lumber which plaintiff's teamster drew. Some of the boards and plank—about 1-5 or 1-6 of them—were " wany edged." The defendant claimed that he understood " square edged " meant square edged on both sides the board or plank, which would exclude " wany edged " lumber. The plaintiff claimed that he understood square edged to mean square edged on one side, which would not exclude all " wany edged " boards or plank. When defendant discovered that plaintiff's teamster was drawing some " wany edged " boards and plank he sent word to plaintiff by the teamster that he should not accept the " wany edged " boards and plank. After plaintiff had received word from defendant to this effect two or three times, he went to defendant's house to see him, but defendant happened to be away from home. None of the lumber had at this time been used by defendant, and none had at this time been measured, except as above stated. The " wany edged " boards and plank were not separated from the other boards and plank, but all the boards and plank were piled up as they were unloaded, on said common, the " wany edged " intermingled with the rest as they naturally came from the mill, but there was no evidence that the boards and plank were intermingled with the square timber or dimension sticks, though the whole lumber—dimension stuff and all—was put in one pile. The court inferred that it was unloaded as lumber naturally would be, the sticks thrown by themselves into one part of the pile, and the boards and plank in another part of the same pile. No fault had been found with the dimension stuff or with the boards, except as above stated.

At this time, the plaintiff finding the defendant away from home, and having no better lumber to deliver, concluded to repudiate the contract as invalid under the statute of frauds, and accordingly wrote a note and left it for defendant, stating that he

could furnish no better lumber, and that not being satisfactory, he had concluded to rescind the contract, and notified defendant not to meddle with or use the lumber which had been drawn. This note came to defendant's hands that day. The defendant then advised with counsel as to his rights, and subsequently informed plaintiff he could hold the lumber which answered the contract on the ground it was delivered and accepted under the parol contract. The plaintiff insisted that it had not been measured prior to the written notice, and told defendant not to use it. The defendant proceeded and appropriated all the lumber except the "wany edged" boards and plank. This, (the wany edged,) he has never claimed.

The value of the 3,996 feet of dimension stuff drawn by plaintiff was $51.94; the value of the 2,343 feet of boards and plank drawn by plaintiff was $25.77, all of which has been used by defendant except the "wany edged," which was about 1-5 or 1-6 of said 2,343 feet, which was worth $4.50. The plaintiff has not drawn away the lumber because defendant claimed it, except the "wany edged," and forbids his drawing it away.

Upon the foregoing facts the court, *pro forma*, rendered judgment for defendant to recover his costs. Exceptions by plaintiff.

\* The opinion of the court was delivered by

WILSON, J. It is claimed by the plaintiff that the mistake or misunderstanding of the parties, as to the meaning of the stipulation that the boards and plank should be *square edged*, gave either party the right to rescind the contract. This position, we think, is not sound. The question relates to the interpretation or construction of the contract merely. The meaning of the words *square edged boards and plank* is to be determined upon the evidence, and by the same rule as if the contract was in writing. There can be no doubt as to the literal meaning of the language of the stipulation in question. But if the words, *square edged boards* or *plank*, have acquired a customary meaning as applicable to the subject of this contract, it would be competent to show such acquired meaning of the language in order to give construction to the contract according to the intention of the parties. The contract was within the statute of frauds at the time it was entered into, and for this reason it is void unless the defendant has

\* It did not appear who argued this case.

since that time accepted and received part of the lumber by con-
sent of the plaintiff, or upon the terms and within the meaning of
their agreement. The plaintiff agreed to deliver the lumber to
the defendant. The plaintiff's teamster drew that portion of the
lumber mentioned in the declaration and unloaded it on a com-
mon near the defendant's house. In unloading it the defendant's
hired man assisted. While the lumber remained there, and before
the defendant had used any portion of it, or agreed as to its meas-
urement, the defendant discovered that a small quantity of the
boards and plank were "wany edged," and sent word to the
plaintiff that he should not accept any "wany edged lumber."
To this the plaintiff replied by letter, stating to the defendant that
he had no better lumber, and that not being satisfactory, had con-
cluded to rescind the contract, and notified the defendant not to
meddle with the lumber which he had drawn. The case states
that the defendant received that notice the day on which it was
written. The defendant then advised with counsel as to his rights,
and subsequently informed the plaintiff he could hold the lumber
which answered the contract, on the ground it had, as he claimed,
been delivered and accepted. We think the facts detailed in the
bill of exceptions do not show a delivery by the plaintiff, or ac-
ceptance by the defendant, of any portion of the lumber. The
contract was entire. From its subject matter and terms, the par-
ties must have understood that the plaintiff would draw the lum-
ber to the defendant, that they would meet and look it over and
determine whether the whole or part of it would answer the con-
tract. When they had done all this, they would measure the lum-
ber the defendant would accept, and the plaintiff would deliver
it upon receiving payment of the contract price. Each piece or
stick of the lumber drawn by the plaintiff was marked by the
sawyer with figures indicating the number of feet it contained as
measured by him, for the purpose of charging for the sawing.
But at the time the controversy arose as to whether all the lum-
ber drawn was such as the contract called for, none of it had been
measured for delivery to the defendant, and he had not agreed to
take it at the sawyer's measurement. At the time the defendant
notified the plaintiff he should not accept the "wany edged" por-

tion of the lumber, he did not even notify the plaintiff that he would accept any part of it.   It was not until after the plaintiff had rescinded or repudiated the contract, on the ground it was invalid under the statute of frauds, that the defendant claimed to hold any part of the lumber.   The defendant had not paid for any part of it, and there is nothing in the case tending to show that either party had done anything under the contract sufficient to take it out of the statute.   The property had not vested in the defendant ; it belonged to the plaintiff, and the subsequent conversion of it by the defendant rendered him liable in trover.

The judgment of the county court is reversed, and judgment for the plaintiff to recover as damages the several sums which the court below found the different kinds of lumber were worth, with interest from and after the trial of the cause. in that court, and his costs.