## PEOPLE'S NATIONAL BANK OF SALEM

### v.

## ALEXANDER CLAYTON.

GENERAL TERM, 1893.

---

*When note endorsed for specified purpose way be used for other purpose.   Collateral security.   Security to*
*• endorser.   Right of action.*

1.   A promissory note, regular upon its face, may be used by the maker as collateral security for a pre-existing debt notwithstanding a private agreement between himself and an endorser to the contrary, provided the one receiving it has no knowledge of such agreement.

2.   But if the endorser endorses upon the understanding that the note shall be discounted and the proceeds used in a specified

way for his benefit, one having knowledge of this under-
standing must not take the note as collateral.

3. Nor are the rights of the endorser in this respect altered by
the fact that at the time of the endorsement the maker gave
him ample security therefor.

4. If one has the legal right to bring suit it is immaterial, upon
the question whether the suit can be maintained, from
what motive he brings it.

Assumpsit upon a promissory note. Plea, the general
issue. Heard upon the report of referees at the September
term, 1892, Rutland county, TAFT, J., presiding. Judg-
ment for the plaintiff to recover the full amount of the note.
The defendant excepts.

*J. C. Baker* for the defendant.

The plaintiff had not the title of a *bona fide* purchaser for
value and holds the note subject to the equities of the de-
fendant. *Smith* v. *Bibber*, 82 Me. 34; *Ruddick* v. *Lord*,
15 Iowa 441; *Depeau* v. *Waddington*, 6 Whart. 220; *Cul-
lum* v. *Branch Bank*, 4 Ala. 21; *Codding* v. *Bay*, 20 Johns.
637; *Leslie* v. *Bassett*, 129 N. Y. 523.

*Henry A. Harman, Fayette Potter* and *S. W. Russell*
for the plaintiff.

The plaintiff might receive this note as collateral security
for a pre-existing debt without reference to the equities of
the defendant. *Railroad Co.* v. *National Bank*, 102 U.
S. 14-59.

Although the plaintiff knew that this was accommodation
paper, it might still receive it as collateral. *Brown* v.
*Mott*, 7 Johns. 361; *Bank of Rutland* v. *Buck*, 5 Wend.
66; *Mohawk Bank* v. *Corey*, 1 Hill 513; *Seneca Bank* v.
*Neass*, 3 N. Y. 442; *Grandin* v. *LeRoy*, 2 Paige 509;
*Todd* v. *National Union Bank*, 19 Atl. Rep. 218; *Pur-*

*chase* v. *Mattison*, 6 Duer 587 ; *Moore* v. *Ward*, 1 Hilton 337 ; *DeZeng* v. *Fyfc*, 1 Bosw..335 ; *Duncan* v. *Gilbert*, 29 N. J. L. 521 ; *Fetters* v. *Muncie National Bank*, 34 Ind. 251 ; *Jackson* v. *First National Bank*, 42 N. J. L. 177 ; *Parker* v. *McLean*, 134 N. Y. 255, 259.

TYLER, J.  This action was brought upon a promissory note made by T. R. Griffiths March 17, 1890, payable to the order of the defendant two months after date at the Baxter National Bank of Rutland, for the sum of $3,500, and indorsed by the defendant.  The referees find that Griffiths had for several years been operating two slate quarries, one of them under a lease from the defendant to whom he was indebted for royalties reserved by the lease.  The note was made and indorsed for the purpose of having it discounted, and upon an understanding between the defendant and Griffiths that of the avails $1,200 should be applied by the latter in payment of his workmen, to whom he was in arrears for the month of February, and the remainder in payment of the royalties due the defendant and of certain notes of Griffiths which the defendant had indorsed for him.

At the time the defendant indorsed the $3,500 note Griffiths, conveyed to him real and personal property exceeding in value the amount of the note and of the defendant's other liabilities for and demands against him as security therefor.

On the 19th of March, 1890, Griffiths offered the $3,500 note for discount at the plaintiff bank, which refused it for the reason that the amount thereof, in addition to other notes which it held against him, exceeded the amount which it could by law hold against one person.  It then held three notes against Griffiths, one for $1,100 indorsed by E. D. Jones, one for $750 indorsed by E. R. Thompson, and one for $600, indorsed by O. W. Williams.  The $1,100 note was to fall due March 21st, and on the 19th Griffiths and Jones applied to the plaintiff to renew it, and it was renewed,

and by an agreement made by the plaintiff and Griffiths the $3,500 note was left with the plaintiff "as collateral and additional security for its payment."

On April 1st the defendant took possession of one of the quarries so conveyed to him and of the slate and machinery upon it, and sold the same and applied the proceeds to the payment of Griffiths' indebtedness to him and of Griffiths' obligations which he had indorsed. The amount received from this sale does not appear, but it was sufficient to have paid the $3,500 note which the defendant has always refused to pay, though it was duly presented and protested.

On the 7th of April, 1890, the defendant notified the plaintiff of the purpose for which he indorsed the $3,500 note, and demanded its surrender. After that date the other two notes were renewed at Griffiths' request upon an arrangement made between him and the plaintiff before that date that the plaintiff should hold the $3,500 note as collateral and additional security therefor.

The plaintiff had never advanced any money on the note in suit, and had no interest in it except as security for the three notes above mentioned which it still holds, and which are due and unpaid. It has no interest in this suit which it brought for the benefit of Jones, Thompson and Williams (who were fully responsible, and who indemnified the plaintiff against costs and expenses), and for the benefit of the holders of three other notes against Griffiths amounting to $1,175, which it held for collection and which Griffiths directed the plaintiff to pay out of the $3,500 when collected.

Griffiths was much embarrassed financially during all these transactions, and on July 28, 1890, was adjudged an insolvent on his own petition, which was filed July 10th. The insolvency proceedings were pending when the referees' report was filed.

The defendant's counsel claims that this action cannot be maintained upon the findings of the referees that the plaintiff

held the $3,500 note only as security for other notes, that the indorsers of those notes were fully responsible, and that this suit was brought for their benefit. It is true that the suit was brought in the interest of those indorsers and at their instance, but the plaintiff was the legal holder of the note sued upon, and the suit will result primarily and directly for its benefit. It will have the legal title to the money recovered, although the money will ultimately and indirectly benefit the indorsers, for they will be relieved by the amount which the plaintiff applies on the notes indorsed by them. The plaintiff had a legal right to bring the action, and the purpose or motive with which it brought it is immaterial.

Counsel on both sides have regarded the defendant as an accommodation indorser. Byles on Bills and Notes, 223, says that an accommodation bill is one to which the accommodating party, be he acceptor, drawer or indorser, has put his name, without consideration, for the purpose of benefiting or accommodating another party who desires to raise money on it, and is to provide for the bill when due. As to third parties the rights and liabilities of an accommodation party are, in general, the same as those of a party receiving valuable consideration for his signature. Rand. Com. Paper, s. 473.

This note was made to raise money upon, the defendant being secured for his indorsement. It was business paper rather than accommodation paper. If it was in a strict sense the latter, the law merchant raises a presumption of consideration in favor of bills and notes. The consideration may be and often is the accommodation or procurement of credit for another party to the paper. This is a valid consideration applicable alike to all parties and binding upon the accommodation maker, drawer, etc., even in favor of a holder who took the paper with full knowledge of its accommodation character.

That the note might be pledged as collateral security for

a pre-existing debt is held by the cases cited on the brief of the plaintiff's counsel, and in cases referred to in note to Byles on Bills & Notes, p. 210. The contrary doctrine was held in *Bay* v. *Coddington*, 5 Johns. Ch. 54. Many cases in New York and other states followed that decision and are reviewed and approved in *Bramhall* v. *Backett*, 31 Me. 205. Mr. Justice Harlan, in *Railroad Co.* v. *National Bank*, 102 U. S. 14, said that the doctrine of those cases had generally been departed from, and that the taking of a promissory note as collateral security for a pre-existing debt was as much in the usual course of commercial business as taking it in payment of a debt, and that in neither case was the holder affected by equities and defences between prior parties. This doctrine was recognized in *Noyes* v. *Landon* 59 Vt. 569, and is now generally so laid down in the elementary books. Courts that hold that there must be some other or new consideration moving between the indorser and indorsee concede that a stipulation for delay or extending a forbearance is a sufficient consideration.

The $1,100 note indorsed by Jones was about to mature. He and the maker, Griffiths, desired its renewal, and it was renewed upon an agreement made between Griffiths and the plaintiff that the $3,500 note should be deposited as additional security for its payment, and it was so deposited. At this time the plaintiff had no knowledge of the agreement upon which the defendant indorsed the collateral note, nor of its diversion, but took it as a *bone fide* holder upon a new consideration moving between it and the maker.

It is found that the plaintiff did not hold the $3,500 note on account of the Thompson and Williams notes, either as collateral security therefor or in consideration of their renewal, until after it had been notified by the defendant of the purpose for which he became indorsee. But the plaintiff contends that as the defendant was secured for his indorse-

ment it was not bound by the notice, and that it holds this paper as security for the other two notes.

Was the plaintiff a *bona fide* holder for value of the note in suit in respect of the Thompson and Williams notes? Extending the time of payment of those notes was a sufficient consideration tor such holding. Treating this note as accommodation paper, it was not a defence for the defendant that its accommodation character was known to the plaintiff. This is laid down in all the elementary works. See *Arnold* v. *Sprague*, 34 Vt. 402 ; *Tucker* v. *Jenckes*, 5 Allen 330. The decision of this question turns upon the effect that is to be given to the defendant's notice.

The note was not made and indorsed for the purpose of giving general credit to the maker, therefore the case does not fall within the rule that one may become a *bona fide* holder of accommodation paper with knowledge of its character, and that it was signed by the accommodating party without consideration. It was indorsed for a restricted and special purpose, and as between the original parties the maker was bound by his agreement with the defendant and could have used the note for no other purpose than the one agreed upon. When this purpose was known to the plaintiff there is no reason why it should have stood any better in respect of the note than the maker would have stood.

The plaintiff cannot invoke the rule of law that generally protects *bona fide* holders of negotiable paper fraudulently diverted or used, that when one of two innocent parties must suffer by the wrongful act of another, the one who put it in the power of the third person to commit the wrong must bear the loss. Here the plaintiff incurred no obligation and in no wise changed its position in respect of the Thompson and Williams notes before it received the defendant's notice. As the effect of the indorsement was to

authorize the giving of credit to the maker of the note, there is no reason why that authority, until acted upon, was not revocable.

The defendant having applied the amount that he realized from the sale of the property in payment of his demands against and liabilities for Griffiths, (other than this note) and rightfully, so far as anything appears, it was for his pecuniary interest not to be obliged to pay the $3,500 note. For this reason he was entitled to insist, after notice, that his agreement with Griffiths should be performed.

If Griffiths had got the note discounted and used the money in accordance with his agreement with the defendant he would have paid the defendant the amount that he owed him for royalties and taken up the notes which the defendant had endorsed for him, besides paying about $1,200 to his workmen. The defendant applied the proceeds of the sale to the payment of his royalties and of the note upon which he was liable as indorser, and there is no finding or presumption that he made this application without right or without Griffiths' consent. It is true that when he indorsed the $3,500 note he received from Griffiths, as security, property that was worth more than the amount of all his debts against and liabilities for Griffiths. It is not found what sum was realized from the property that was sold, nor what the remainder would have sold for ; nor does it appear that when the defendant gave the plaintiff notice, on April 7th, he had any money in hand derived from the sale. Assuming that when the plaintiff extended the time of payment of the Thompson and Williams notes the defendant was still amply secured for his liabilities on the $3,500 note, and that the securities would have sold for enough to have paid him, Griffiths could not have put the defendant in the position of having to pay the note and resort to the securities

for reimbursement, for it would have been in violation of the agreement. The plaintiff, after notice, stood in Griffiths' place, and had no rights in respect to the note that Griffiths would not have had if he had retained it in his possession.

If the defendant had been compelled to have paid the note under the agreement, he would have had the benefit of all the avails of it but $1,200, and would have had all his securities. If compelled to pay it in full to the plaintiff he would have but part of the securities with which to reimburse himself, so that, although he has had the benefit of $2,300 from the sale of part of the securities, Griffiths' diversion of the note materially changed the defendant's position in relation to it.

It had been agreed before the notice was given that the plaintiff should renew the other two notes, and it is insisted that the plaintiff was bound to carry out the agreement. It was under no obligation to the indorsers of those notes. They were not parties to the agreement and it does not appear that they knew it. Griffiths was not in a position to insist upon it. He made it in violation of his agreement with the defendant.

The defendant's counsel contends that Griffiths' adjudication in insolvency invalidated his assignment to the defendant; that the assignee might recover the property or the proceeds of the sale from him, and therefore, he should not be held liable in this action. There is no finding that the defendant has been called upon to surrender the property or proceeds or that the assignment was made to him in circumstances that gave the assignee in insolvency, if one was appointed, the right to recover them.

From its relation to the note the plaintiff might maintain an action upon it against the defendant. The only remain-

ing question is how much it is entitled to recover. For the reasons above stated it can only recover the amount of the Jones note.

*Judgment reversed and judgment for the plaintiff to recover of the defendant as much of the note in suit as there is due upon the $1,100 note.*