## The Northern Produce Exchange, Plaintiff in Error, v. Ben Ablon, Defendant in Error.

### Gen. No. 16,760.

1. CONTRACTS—*when established.* *Held,* that the telegrams set forth in this opinion constituted a contract between the parties for the sale and delivery of eggs, and that the direction of the vendee to the vendor to hold such eggs at the point of delivery for purposes of inspection did not operate to affect the binding character of the contract.

2. CONTRACTS—*when customs enter into.* Customs and usages of the trade enter into a contract and form a part thereof and the contract should be construed with relation to such customs and usages.

3. SALES—*right of inspection.* A purchaser of goods having no op-

portunity for inspection at the time of purchase must be given a reasonable opportunity for inspection before acceptance.

Error to the Municipal Court of Chicago; the HON. CHARLES N. GOODNOW, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Reversed with finding of fact and judgment. Opinion filed April 19, 1912.

HAROLD L. ICKES, for plaintiff in error.

No appearance for defendant in error.

MR. JUSTICE F. A. SMITH delivered the opinion of the court.

Plaintiff in error, the Northern Produce Exchange, brought an attachment in the Municipal Court of Chicago against the defendant in error, Ben Ablon, to recover damages for a breach of contract.

The controversy arose out of the following telegrams:

"Dallas, Tex., March 28, 1910.
3:37 P. M.

Northern Produce Exchange, Chicago:
Wire best offer two cars storage packed eggs shipment tomorrow and Thursday.

BEN ABLON."
"Chicago, March 29, 1910.
11:10 A. M.

To Ben Ablon, Dallas, Texas.
Answering yesterday's telegram, if storage packed are in new whitewood cases well selected Texas stock will take two cars specified six twenty delivered immediate answer."
"Dallas, Tex., March 29, 1910.

Northern Produce Exchange, Chicago.
Accept your offer six twenty delivered two cars storage packed eggs wire shipping instructions. * * *
3:06 P. M.                                    BEN ABLON."
"March 29, 1910.
5:15 P. M.

To Ben Ablon, Dallas, Texas.
Bill both cars New York care Merchants Despatch

at Chicago hold on Western roads track at Chicago for inspection.   Notify us 34 Clark St." * * *

"Dallas, Texas, March 30, 1910.
Northern Produce Exchange, Chicago, Ill.
Stopping cars in Chicago not satisfactory have made other arrangements.
12:17 P. M.                                   BEN ABLON."

"March 30, 1910.
2:16 P. M.
To Ben Ablon, Dallas, Texas.
Very well what route did you ship?   Answer."

"Dallas, Tex., March 30, 1910.
9:08 P. M.
Northern Produce Exchange, Chicago, Ill.
Answering wire of even date another party was interested in the two cars offered you who would not consent to routing via Chicago.   Consequently sold to another firm.   I'm sure can get you two cars at same price for next week's shipment.   If can use wire answer.
BEN ABLON."

"March 31, 1910.
10:17 P. M.
To Ben Ablon, Dallas, Texas.
Your night letter thirtieth surprises us as we did not cancel two cars purchased 29th and next week's shipment not satisfactory.   Have been compelled to buy to cover orders."

The evidence shows that upon the receipt of the last telegram from the defendant in error, Ablon, dated March 30, 1910, the plaintiff in error purchased eggs to cover the amount of eggs named in the telegram, and that it was compelled to pay $6.52½ per case for eggs which it bought on the market, making a difference of 32½c per case or $260 for the two carloads.

We are not favored by an argument on behalf of the defendant in error, but we gather from the abstract

that the contention of defendant in error upon the trial was that no contract was entered into between the plaintiff in error and the defendant in error, as a result of the telegrams which passed between the parties. The defendant in error's contention was that by the telegram dated March 29, 1910, in which the plaintiff in error gave shipping directions, it added a new condition to the contract made in the preceding telegram by directing the eggs to be held on Western roads track at Chicago for inspection.

The proof in the record showed that where eggs were purchased as contemplated in the telegrams shown to be delivered at Chicago it is quite customary and usual to order the eggs shipped to other places than Chicago, where the railroad tariff provides for saving in freight by shipping through to an ulterior destination. Where, as in this case, shipment was directed to be made through to an ulterior destination the purchaser gets the benefit of the lowest tariff rate from the point of shipment to the point of ulterior destination.

In our opinion the telegrams above set forth constitute a contract for two cars of eggs to be delivered at Chicago. A purchaser is entitled to an opportunity of inspection at the point of delivery before accepting the eggs. The telegram directing the cars to be held at Chicago for inspection, therefore, constituted no variation from the contract which had been made. If the ultimate destination of the eggs had been Chicago the condition would have been the same as that set forth in the telegram of plaintiff in error dated March 29, 1910. The plaintiff in error would have the right and privilege to inspect the eggs before accepting them, and that was the effect of the shipping directions given. The eggs were to be delivered according to the contract in Chicago; and it constituted no variation of the contract to direct them to be held at Chicago for inspection. That a purchaser of goods, without oppor-

tunity for inspection at the time of purchase, must be given a reasonable opportunity for inspection before acceptance of them cannot be legally disputed. 2 Mechem on Sales, sections 1375-1376; Doane v. Dunham, 79 Ill. 131. In 2 Mechem on Sales, Sec. 1377, it is said:

"The place of inspection, in the absence of contrary intention, must ordinarily be the place at which acceptance is due—as distinguished from the place of receipt, where they are separate—the place at which the buyer is finally bound to accept or reject the goods."

The rule above stated by Mechem is supported by Pierson v. Crooks, 115 N. Y. 539, where it is held that the right of inspection continues until the goods are received and accepted at their ultimate destination, thus implying that the right exists to inspect at any time during the transit. That rule, however, it is not necessary to invoke in this case, for the contract was to be fulfilled by shipment through Chicago and Chicago was the place of acceptance and the plaintiff in error had the right to inspect the goods at Chicago.

The testimony in the record shows that it was the custom and usage of the trade to afford an opportunity of inspection before delivery. Customs and usages of the trade enter into contracts and form a part thereof, and the contract should be construed with relation to such customs and usages. Doane v. Dunham, *supra;* Off v. Inderrieden Co., 74 Ill. App. 105.

In Steidtmann v. Joseph Lay Co., 234 Ill. 84, at page 88 of the opinion the court say:

"A person entering into a contract in the ordinary course of business is presumed to have done so in reference to any existing general usage or custom relating to such business. And this is so whether he knew of the custom or not."

To the same effect is Montgomery v. Ricker, 43 Vt. 165.

We are of the opinion that the plaintiff in error, by

the terms of the contract, had the right of inspection at Chicago in the absence of any specific directions made in the telegram of March 29, 1910; and that telegram constituted no departure from the contract which had been made, added no new condition thereto, and was within the request of the telegram of defendant in error of the same date asking for shipping instructions.

Aside from that consideration, however, the direction to hold cars on Western roads track at Chicago for inspection, was not such a demand as would in any way affect the plaintiff's right to make a proper demand afterwards, nor was it such a breach of the contract as would justify its abandonment or rescission. Weintz v. Hafner, 78 Ill. 27.

The telegram of defendant in error, dated March 30, 1910, saying, "Stopping cars in Chicago not satisfactory have made other arrangements,"—was acquiesced in by the plaintiff in error by a telegram of the same date,—"Very well, what route did you ship? Answer." The effect of this latter telegram was to waive the order to hold on track at Chicago for inspection. Upon receipt of this telegram the defendant in error was bound to ship the eggs to Chicago, and the part of the shipping directions to which the defendant in error objected having been waived, no excuse was left for the defendant in error for not fulfilling his contract.

There was no dispute as to the measure of damages on the trial. In our opinion, the trial court should have entered a judgment for $260, with interest from March 30, 1910, the date of the default. The judgment, for the error indicated, will be reversed with a finding of fact in favor of the plaintiff in error, and judgment will be entered here on such finding of fact for $286 in favor of the plaintiff in error and against the defendant in error.

*Reversed with finding of fact and judgment.*