VANCE W. MILES *v.* VERMONT FRUIT CO.

May Term, 1923.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed May 20, 1924.

*Error Advanced for First Time in Supreme Court—Evidence—*
*Parol Evidence to Interpret Written Contract—Rule Not*
*Affected by Statute of Frauds—Presumptions—Term in*
*General Use in Trade—Sufficiency of Description in Mem-*
*orandum of Subject-Matter on Which Parties Agreed—*
*Sales—Understood Shipping Point Inferable from Long*
*Course of Dealing—Parol Evidence to Establish Shipping*
*Point So Recognized—Terms Cash When Not Otherwise*
*Specified—Sale—Evidence Legitimately Tending to Prove*
*or Disprove Controverted Fact Admissible Though Motive*
*Inferable Therefrom — Witnesses — Cross-examination of*
*Party—Admission of Telegram to Refute Party's Evi-*
*dence—Decline in Price Admissible on Question of Dam-*
*ages—Objections to Evidence Not Raised in Lower Court—*
*Impeachment by Contradictory Statements—Harmless Er-*
*ror—Striking Out Irresponsive Answer—Indefinite Objec-*
*tion—Necessity of Stating Ground of Exception—Instruc-*
*tions as to Quality of Goods to Be Supplied Under Con-*
*tract—Foreign Contract of Sale—Interpretation of Stand-*
*ard of Quality Therein—Indefinite Exception to Court's*
*Charge—Evidence Insufficient to Justify Submission of*
*Question of General Standard of Quality to Jury—New*
*Trial—Lack of Diligence.*

1.  Ground in support of motion for a directed verdict advanced for the first time in Supreme Court need not be considered.

2.  While the terms of a contract required by the Statute of Frauds to be in writing cannot be shown by parol evidence, such evidence is always admissible, when necessary for that purpose, to furnish the means of interpreting and applying written contracts.

3.  Although the word "branded" in a contract for sale of potatoes may be indefinite and meaningless to the average person, yet, if it has acquired a generally recognized, special meaning among potato growers and dealers, such meaning may be shown by parol evidence.

4.  The rule that parol evidence is admissible to explain not only technical words of art or science, but words or phrases having a local or special meaning in a particular calling, trade, business, or profession, is equally applicable when such words or phrases appear in a memorandum relied on under the Statute of Frauds.

5.  The presumption is that words or phrases are used according to their understood meaning in the place of business with reference to which the contract is made.

6.  Parol evidence as to such meaning being the only method of ascertaining the intention of the parties in entering into the agreement, such evidence does not contradict or change the written instrument.

7.  That the word "branded" is in general use among potato growers and dealers to indicate the quality of potatoes, a branded potato being superior in quality to one that is not branded, *held* apparent from evidence of witnesses, half of whom were called by each party, who testified as to the quality of certain potatoes, using the term "branded" potatoes, without objection, as the standard of comparison.

8.  In action by seller to recover damages for buyer's refusal to accept a carload of potatoes, defendant's motion for a directed verdict because the memorandum did not describe the subject-matter as to which the parties agreed sufficiently to satisfy the requirements of the Statute of Frauds, *held* unavailing, where plaintiff claimed to have furnished the quality of potatoes defendant understood contract called for and the evidence thereon was conflicting, although plaintiff may have

understood a somewhat inferior quality would have met re-
quirements of contract.

9. When parties to a contract of sale, through a long course of
dealing, have recognized a particular shipping point, it may
fairly be inferred that such point was the one intended, none
other being specified in the agreement.

10. Parol evidence was admissible to show that parties, through a
long course of dealing, had recognized a particular shipping
point, where the memorandum agreement specified none, as
the evidence was not an attempt to prove the contract by
parol, but rather to aid in the interpretation and application
of a contract already proved.

11. Where potatoes were offered and accepted by telegrams, which
did not stipulate terms of payment, the legal intendment of
the contract was a sale for cash on delivery before title
passed, which was not affected by fact that seller saw fit to
ship them on credit.

12. While the purpose or motive which actuates a party in bringing
a suit or making defense, when he has a legal right of action,
or legal defense, is immaterial, evidence that has a legiti-
mate tendency to prove or disprove a controverted fact is
not inadmissible because motive, or lack of motive, good
faith, or bad, is inferable therefrom.

13. In action by seller to recover damages for buyer's refusal to
accept a carload of potatoes, where defendant testified that
his reason for refusing them was because they were not of
the quality specified in contract, on cross-examination evi-
dence that defendant knew of decline in price of potatoes
before receiving notice of their arrival, connected by later
evidence tending to show that to be his reason for refusing
them, was admissible as bearing on the credibility of his tes-
timony, both as to quality of the potatoes and his reason for
refusing them.

14. Under such circumstances, the evidence was also admissible as
proper cross-examination of a party.

15. In action by seller to recover damages for buyer's refusal to
accept a carload of potatoes, where defendant denied on
cross-examination that he had an idea of rejecting them on
a certain day, cross-examination as to whether he meant what
he said in his telegram of that date to plaintiff, the telegram
not at that time being in evidence, to which defendant an-

swered that he did, was proper, no one appearing to have been misled by the question, and the answer being harmless, since the contents of the telegram had not then appeared.

16. In such an action, it was proper cross-examination to ask defendant if, when he telegraphed plaintiff on a certain date, he had begun to consider refusing the potatoes.

17. On cross-examination, the defendant having answered "No" to the question whether, when he telegraphed plaintiff on a certain date, he had begun to consider refusing the potatoes, the telegram mentioned, advising that market was declining heavily, instructing plaintiff to place claim for delay, and stating "wire protection. or will refuse," was admissible, not only as tending to refute such testimony of defendant, but also upon the probability of his later claim that they were of inferior quality.

18. Testimony of plaintiff as to drop in price of potatoes between date when plaintiff sold them in Maryland for delivery in Vermont and date when defendant telegraphed plaintiff, threatening to refuse them on account of delay in their receipt, was admissible against defendant's objection that, "a decline in the South does not cause a decline here for several days—six or seven days," there being no evidence upon which to predicate the ground of this objection, and the witness having already testified, without objection, that the price in the New York market governed New England and the Atlantic coast, and defendant's telegram having stated, "market declining heavily."

19. Decline of the market for potatoes between time of sale and refusal of buyer to accept is admissible on the question of damages.

20. Objections to evidence, not raised below, will not be considered on review in the Supreme Court.

21. Where a person attempts to justify his acts on certain grounds, the fact that he has at various times stated other and different reasons for such acts has a direct and potent bearing on the credibility of the claim relied upon, and evidence thereof is admissible, notwithstanding other facts are inferable therefrom.

22. Where an answer given under exception added nothing to what the witness had already testified to without objection, the exception was of no avail.

23. Where part of an answer was objectionable as irresponsive to the question, proper method of disposing of the objectionable part was by motion to strike out.

24. Where plaintiff's witness in testifying concerning the quality of certain potatoes which defendant had refused to accept and claimed were not of the quality called for by the contract, in response to the question whether they were "straight pack," answered, "They were what we call a 'straight pack' car; I called them as good a car as those I had just unloaded there and that was the 'Star Brand,'" refusal to grant defendant's motion to strike out the objectionable part of the answer on the ground that there was no evidence of the quality of "this 'Star Brand,'" *held* not reversible error, the answer amounting to no more than a comparison of the quality of the potatoes in question with "Star Brand" potatoes with which it had already appeared defendant was familiar.

25. Refusal to strike out the testimony of such witness, comparing the quality of certain potatoes with "Star Brand" potatoes, on the ground that there was no evidence of that brand, was harmless, where later many witnesses testified, without objection, using the "Star Brand" as a standard of quality in testifying to the quality of the potatoes in question.

26. Where report of United States Department of Agriculture was admitted in connection with witness's testimony, objection to witness's reading "anything but what was pointed out," *held* too indefinite to be availing.

27. An exception to argument of counsel as to the evidence, specifying no ground of exception, is unavailing.

28. The Supreme Court will not consider a claimed error in the charge of the lower court, when the question was not raised by any exception taken thereto.

29. In action of contract for sale of "branded" potatoes, where court charged jury that under contract plaintiff was bound to furnish potatoes equal to potatoes ordinarily sold in same general locality of place of sale, at that time, as branded, an exception thereto on the ground that, because of plaintiff's testimony that he presumed the defendant understood he was buying No. 1 potatoes, and the defendant's testimony that such was his understanding, it was the duty of plaintiff to furnish No. 1 potatoes regardless of branded standards, *held* without merit, in view of the evidence which made

question of plaintiff's knowledge of defendant's understanding of contract for the jury, defendant not being entitled to charge contended for, unless a contract making No. 1 potatoes the standard of quality was established, and defendant neither having asked to have that question submitted to the jury, nor complained because it was not.

30. In such action the charge given as to the quality of potatoes to be furnished under the contract *held* sufficient, as against the objection that it did not instruct the jury that failure by plaintiff to any appreciable extent to furnish potatoes equal to branded potatoes would preclude a recovery.

31. A contract for the sale of potatoes, made by telegrams, the offer coming from the seller in Maryland to the buyer in Vermont, the contract not to be complete until the offeree's acceptance was accepted or confirmed in Maryland, and the potatoes to be shipped f. o. b. a place in Maryland, *held* a Maryland contract.

32. In action on a Maryland contract for the sale of potatoes, and no other standard being specified therein than "branded" potatoes, the court correctly charged the jury that the plaintiff was bound to furnish potatoes equal in quality to potatoes ordinarily sold in the same general locality of the place of sale, at that time, as branded potatoes.

33. Exception to court's charge *held* too indefinite to be availing.

34. Evidence as to the standard of branded potatoes in the general market *held* insufficient to justify requested instructions that standard of branded potatoes to be supplied under a certain contract of sale should be that adopted in the general market.

35. Defendant's petition for new trial denied on the ground that he failed to use such diligence to discover the facts alleged in his petition as the law requires.

ACTION OF CONTRACT. Plea, the general issue. Trial by jury at the September Term, 1920, Chittenden County, *Wilson*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case. *Affirmed. Petition for new trial denied.*

*John J. Enright* and *Guy M. Page* for defendant.

*Warren R. Austin* for the plaintiff.

SLACK, J.  The plaintiff seeks to recover damages because of defendant's refusal to take and pay for a carload of potatoes which it is claimed he purchased from the plaintiff in July, 1920.  Trial was had by jury resulting in a verdict and judgment for the plaintiff, and the case is here on defendant's exceptions.

The plaintiff and the defendant Fayette, who is the Vermont Fruit Company, are, and for many years have been, produce merchants; the former resides in the state of Maryland, and the latter resides in Burlington, this State.  On July 17, 1920, the plaintiff sent the defendant a telegram which read:

"Crisfield, Md. July 17, 1920.

Vermont Fruit Co.
Burlington, Vt.
      Offer car stave barrel cobblers equal branded heavy packed straight marks nine sixty f. o. b. rush subject confirmation.

VANCE W. MILES."

Upon receipt of this telegram, the defendant immediately wired the plaintiff:

"Burlington, Vt. July 17, 1920.

Vance W. Miles,
Crisfield, Md.
      If quality as represented ship car to Barre, Vt., invoice Burlington wire number.

VERMONT FRUIT CO."

To which plaintiff replied:

"Marion, Md. July 17, 1920.

Vermont Fruit Co.
Burlington, Vt.
      Barre and Northern Pacific seventeen eight thirty two.

VANCE W. MILES."

These telegrams comprise all the evidence of the contract which the plaintiff claims has been breached.  The potatoes were

shipped from Marion, Maryland, on July 17, 1920, and arrived in Barre, July 27; the defendant refused to accept them, and on July 31, the plaintiff sold them to the Champlain Valley Fruit Company.

The first questions briefed by the defendant and considered by us arise under his motion for a directed verdict, which was filed at the close of the evidence and was overruled by the court. The ground of the motion is that the telegrams do not constitute such a memorandum as is required by the Statute of Frauds (G. L. 1877), in that (1) they do not clearly describe the subject-matter of the contract, (2) they do not describe a subject-matter as to which the parties agree, (3) they do not show the place from which the potatoes were to be shipped, and (4) they do not show the terms of payment, and the testimony adduced in court does not permit the operation of the presumption that it was to be a contract for cash delivery.

[1] In support of the first claim, the defendant now says that the language "equal branded" in the plaintiff's offer is indefinite and its meaning can only be 'ascertained by resorting to parol evidence, which is not permissible. No particular wherein the telegrams fail to describe the subject-matter of the contract is pointed out by the motion, and the specific ground now relied upon, so far as appears, is here advanced for the first time. We might, therefore, properly decline to notice this question, but since it is fully briefed by both parties, we deem it best to consider it.

[2-6] This, like the questions raised under subdivisions 3 and 4, of the motion, is not a question of the sufficiency of the memorandum under the Statute of Frauds, so much as it is of the right to resort to parol evidence in aid of the writing to discover the intention of the parties and apply it to the subject-matter of their agreement. While the terms of a contract required by the statute to be in writing cannot be shown by parol evidence, such evidence is always admissible, when necessary for that purpose, to furnish the means of interpreting and applying written contracts.

"Brand," according to Webster's New International Dictionary, means "to place a brand upon, especially as a mark of quality, ownership, or manufacture." Although this word, when applied to the subject of potatoes, may be indefinite and meaningless to the average person, yet, if it has acquired a

generally recognized, special meaning among potato growers and dealers, such meaning may be shown by parol evidence under the well-established rule that such evidence is admissible to explain, not only technical words of art or science, but words or phrases having a local meaning or a *special* meaning in a particular calling, *trade, business* or profession. *Montgomery* v. *Ricker,* 43 Vt. 165; *Steidtmann* v. *Joseph Lay Co.,* 234 Ill. 84, 84 N. E. 640; *New England Dressed Meat & Wool Co.* v. *Standard Worsted Co.,* 165 Mass. 328, 43 N. E. 112, 52 A. S. R. 516; *Salmon Falls Mfg. Co.* v. *Goddard,* 14 How. 446, 14 L. ed. 493. See, also, *Wood* v. *Allen,* 111 Iowa, 97, 82 N. W. 451; *Ragland & Co.* v. *Buller,* 18 Grat. (Va.) 323; *Baer* v. *Glaser,* 90 Mo. App. 289; 17 C. J. p. 499. And this rule is equally applicable when such words or phrases appear in a memorandum relied on under the Statute of Frauds. *New England Dressed Meat & Wool Co.* v. *Standard Worsted Co., supra.* The presumption is that such terms were used according to their understood meaning in the place of business with reference to which the contract is made, and evidence as to such meaning is the only method of ascertaining the intention of the parties in entering into the agreement. Such evidence does not contradict or change the written instrument.

[7] That the word "branded" is in general use among potato growers and dealers, including retail dealers, to indicate the quality of potatoes, a branded potato being superior in quality to one that is not branded, is apparent from the fact that sixteen witnesses who resided in Montpelier and Barre, eight of whom were called by the plaintiff, and the others by the defendant, testified to the quality of the potatoes in question, using "branded" potatoes, without objection, as the standard of comparison. That the defendant knew of the use and meaning of this term appears from his testimony that he had been buying potatoes in the market for twelve or fourteen years and was acquainted with, and had handled, two or three different brands—the "Star" brand and the "Shield" brand and perhaps the "Crescent" brand, that he thought that he had bought potatoes that were not branded, and he saw no difference between those and branded ones "except the quality they had, whether No. 1 or No. 2."

While the evidence shows that different growers and dealers use different brands, and that some of them brand potatoes

of a poorer quality than do others, we find nothing to indicate a wider range of quality in branded potatoes than is commonly known to exist in potatoes graded as No. 1. It is a matter of common knowledge that the term "No. 1," while signifying a superior quality, does not mean precisely the same standard to all persons, yet its meaning has never been considered so indefinite as to render a contract in which it is used meaningless. The difficulty complained of is more fancied than real, and is without merit.

[8] Nor can the second ground of the motion avail the defendant in the circumstances disclosed by the evidence. While the plaintiff testified that he intended the defendant to understand his offer to be of potatoes equal in quality to some branded potatoes, but not equal to the general standard, and the defendant testified, in effect, that he understood that the potatoes were to be No. 1, the plaintiff claimed, and testified, that the potatoes shipped were, in fact, No. 1, and around that issue much of the evidence of both parties centered, the plaintiff's evidence tending to show the affirmative, while the defendant's evidence tended to show the contrary. If the plaintiff in fact delivered potatoes of the quality the defendant understood the contract called for, the defendant could not refuse to take them simply because the plaintiff understood that a potato of a somewhat inferior quality would have met the requirements of the contract. In other words, the defendant cannot be heard to say: "True, you delivered me just such potatoes as I bought, but since you did not understand that the contract called for potatoes of that quality our minds did not meet, therefore, I will not accept the potatoes you delivered." Nor is this situation affected by the fact that the plaintiff testified on cross-examination, after he learned of defendant's claim, that probably the defendant thought that he was buying No. 1 potatoes. Whether the potatoes were No. 1, and so met the requirements understood by the defendant, was for the jury.

[9, 10] The defendant next insists that the telegrams are not a sufficient memorandum of the contract because they do not specify the shipping point. The telegram submitting the offer, which was made subject to confirmation if accepted, was dated at Crisfield, Maryland, and the confirmatory telegram was dated at Marion, Maryland. The potatoes were shipped from the lat-

ter point. It is said in *Adams* v. *Janes,* 83 Vt. 334, 75 Atl. 799, that f. o. b., without designation of place, means delivery on board at the usual place of shipping such freight from that locality. But this is an inference of fact, and not conclusive. *Mead* v. *Parker,* 115 Mass. 413, 15 A. R. 110. When parties, through a long course of dealing, have recognized a particular shipping point, it may fairly be inferred that that point was the one intended, when as here, none other is specified in the agreement. It appeared from the parol evidence that plaintiff had shipped defendant several cars of potatoes and produce during the eight years preceding this transaction and that, with few exceptions they were shipped from Marion. The defendant, although later denying any knowledge on the subject, testified respecting the point from which prior shipments had been made, as follows: ''Q. Where were they shipped from, what point in Maryland? A. Marion, Maryland, I suppose—where he is; that is the shipping place from the time he sold us.'' All this evidence came in subject to defendant's objection that the contract could not be proved by parol evidence. This evidence was not admitted for that purpose, but rather to aid in the interpretation and application of a contract already proved, and for that purpose it was admissible. *Mead* v. *Parker, supra; Stoops* v. *Smith,* 100 Mass. 63, 1 A. R. 85, 97 A. D. 76; *Harrigan* v. *Dodge,* 200 Mass. 357, 86 N. E. 780. And it tended to show that the parties manifestly understood that Marion was the shipping point.

[11] Finally, it is urged in support of the motion that the telegrams do not specify the terms of payment, and that the parol evidence is such as to preclude the operation of the presumption that the contract was for cash delivery. We find nothing to take the case out of the well-recognized rule that, it not being stipulated to the contrary, the sale was for cash on delivery before title passed. *Hambleton* v. *U. Aja Granite Co.,* 95 Vt., 295, 115 Atl. 102; *Kitson Machine Co.* v. *Holden,* 74 Vt. 104, 52 Atl. 271. Such is the legal intendment of the contract, and it was not affected by the fact that the plaintiff saw fit to ship the potatoes on credit.

In considering the next exceptions, which are to the admis-

sion of evidence, it should be borne in mind that, so far as the merits of the case are concerned, the controverted question was whether the potatoes were of the quality called for by the contract.

[12-14]  After the defendant had testified that the potatoes were not No. 1, and that he notified the freight agent at Barre that he should not accept them on that account, plaintiff was permitted to show by him, on cross-examination, that he knew the price of potatoes had declined before he received notice of the arrival of the car.  This evidence was objected to as immaterial and irrelevant, and it is now urged that defendant's motive in refusing the potatoes was immaterial.  This, of course, is true.  It is also true that when a person has a legal right of action, or legal defense, the purpose or motive which actuates him in bringing suit, or making defense, is immaterial. *People's National Bank* v. *Clayton*, 66 Vt. 541, 29 Atl. 1020. But evidence that has a legitimate tendency to prove or disprove a controverted fact will not be excluded because motive, or lack of motive, good faith, or bad, is inferable therefrom.  If the defendant knew of the decline in the price of potatoes, and, as later evidence tended to show, had refused to accept them because of that fact, the challenged evidence bore on the credibility of his testimony, both as to the quality of the potatoes and why he, in fact, refused to accept them.  Moreover, this was cross-examination of a party, and as such was proper.

[15]  The defendant denied on cross-examination that he had an idea of rejecting the potatoes on July 27.  He was then asked if he meant what he said in his telegram to the plaintiff under that date, and, subject to the objection that the telegram was not in evidence, answered that he did.  The answer was properly received.  Neither the witness nor any one else appears to have been misled by the question.  Moreover, the answer was harmless, in any event, since the contents of the telegram had not then appeared.

[16, 17]  The defendant was then asked if, when he telegraphed the plaintiff on July 27, he had begun to consider refusing the potatoes, and, subject to the objection that it was immaterial and irrelevant, answered, "No, sir."  This was proper cross-examination.  Moreover, the answer was harmless.

The telegram of July 27, which is as follows:

"Burlington, Vermont, 835 A. M. July 27, 1920.
Vance W. Miles,
Marion Station, Md.

Potatoes not arrived yet market declining heavily must be shipped wrong route big loss on account of delay you protect us and place claim for delay very unsatisfactory to place claim at this end wire protection or will refuse answer at once.

VERMONT FRUIT CO."

was admitted subject to the objection that it was immaterial and had no tendency to prove any issue in the case, and introduced collateral matters. This evidence not only tended to refute the defendant's testimony that he had not decided to reject the potatoes when he sent the telegram, but it bore upon the probability of his later claim that they were of inferior quality.

[18, 19]   The plaintiff was permitted to testify to the drop in the price of potatoes between July 17 and July 27, subject to the objection that his testimony was based on prices at the point of shipment, and that "a decline in the South does not cause a decline here for several days—six or seven days," and that, "the decline of the market price after the purchase is immaterial." There was no evidence upon which to predicate the first ground of objection, but, on the contrary, the witness had already testified, without objection, that the price in the New York market governed New England and the Atlantic Coast. Besides, defendant's telegram of July 27 stated, "market declining heavily." The decline of the market after purchase was clearly admissible on the question of damages, if for no other purpose.

[20]   The waybill and other papers showing the movement of the car from the point of shipment to its destination were admitted in evidence under exception. It is said, generally, concerning these papers that their only tendency was to show bad faith on the part of the defendant in making the claim of delay. This claim is covered by what it said regarding the next exception. It is now claimed that the notations on

the waybill, except that showing the arrival of the car in Barre, were incompetent because it did not appear that they were made in the usual course of business, or contemporaneously with the event, or by one having knowledge thereof. Be that as it may, these questions were not raised below, and, therefore, are not considered.

[21] The agent for the Central Vermont Railway at Barre, one Carr, testified that the potatoes in question arrived in Barre at ten o'clock in the forenoon, July 27, and that he notified the defendant by telephone of their arrival. He was then asked what, if anything, the defendant said at that time about taking the potatoes, and, subject to defendant's objection to any refusal other than the one alleged in the declaration being shown, answered, "He claimed that they had arrived too late." It is now urged that evidence of a refusal which was not insisted upon later was inadmissible, and tended only to show defendant's bad faith in making the claim relied upon. Where, as here, a person attempts to justify his acts on certain grounds, the fact that he has at various times stated other and different reasons for such acts has a direct and potent bearing on the credibility of the claim relied upon, and evidence thereof is admissible, notwithstanding other facts are inferable therefrom.

[22] It appeared from evidence to which no exception was saved that, after the defendant had made the claim to Carr that the potatoes had arrived too late, the latter used all his "persuasive eloquence" to induce the defendant to take them, and thought he had convinced the defendant that he was not justified in refusing them because of delay in transportation; that thereupon the defendant made the claim that the potatoes were not what he bought, namely, No. 1, and that, in discussing the latter claim, Carr said to him, "Had the price gone up a dollar a bushel wouldn't you have considered them No. 1," to which the defendant smiled pleasantly and said nothing. It then appeared, subject to exception, that the next morning Carr said to the defendant, "Practically the same as I had said before," and that the defendant made no reply. Again the defendant urges the inadmissibility of evidence to show motive, and also claims that the circumstances were not such as to call for a reply. The answer given under exception adds nothing to what the witness had already testified to with-

out objection, and the exception is, therefore, of no avail. *Tyrrell* v. *Goslant,* 93 Vt. 63, 106 Atl. 585; *Duprat et ux.* v. *Chesmore,* 94 Vt. 218, 110 Atl. 305. See, also, *Bancroft et al.* v. *Vail,* 95 Vt. 304, 115 Atl. 224; *Lowell* v. *Wheeler's Estate,* 95 Vt. 113, 112 Atl. 361, and *Wellman, Admr.* v. *Mead,* 93 Vt. 322, 107 Atl. 396.

The exception to the admission of evidence showing the number of shipments by the plaintiff to the defendant from Marion, Maryland, is disposed of by what is said regarding the third ground of the motion for a verdict.

[23-25] One Reed, a witness called by the plaintiff, testified concerning the quality of the potatoes as follows: "Q. Were they straight pack?" "A. They were what we call a 'straight pack' car; I called them as good a car as those I had just unloaded there and that was the 'Star Brand,'" whereupon an objection was interposed on the ground that, "There is no evidence of the quality of this 'Star Brand.'" The proper method of disposing of the objectionable part of the answer was by motion to strike out. The defendant claims that the court treated the matter as though such a motion had been made. This is doubtful. But, even so, reversible error does not appear. The objection was that there was no evidence of the quality of "this Star Brand," and not that there was no evidence of the quality of the particular car of potatoes to which the witness referred. As the record stands, the answer amounted to no more than a comparison of the quality of the potatoes in question with Star Brand potatoes, which brand it had already appeared the defendant was familiar with. Moreover, since a large number of witnesses later, without objection, used the Star Brand as a standard of quality in testifying to the quality of these potatoes, the evidence, as against the exception saved, was harmless.

[26] The twenty-first exception relates to the admission of a daily report of the United States Department of Agriculture in connection with the cross-examination of Mr. Mulholland, marketing agent for the State of Vermont, in the employ of the Department of Agriculture. He testified that he was familiar with the reports which the United States Department of Agriculture sent out daily, and that they recognized only one grade of branded potatoes—that No. 2 went as unbranded. Thereupon his attention was called to parts of said report

where "Branded No. 1" and "Cobblers No. 1 branded" were quoted, and the report was then offered in evidence in connection with the cross-examination, and permission was asked to call it to the attention of the jury "on this point." Counsel for the defendant said he had no objection to the reading of the part pointed out, which we take to mean the part called to the attention of the witness. He later claimed that other parts of the report were being read and objected thereto. The entire report was then admitted, and the defendant excepted "to his reading anything but what was pointed out." This was the only objection made, and, manifestly, was too indefinite to avail the defendant. Moreover, the report, except those parts received without objection, is not shown to have been prejudicial to him.

[27] In his closing argument, counsel for the plaintiff said, "The only evidence of branded potatoes that equal No. 1 U. S. classification are the Star brand and the Shield brand and all unbranded potatoes are No. 2 according to their evidence and their claim here in court." This statement was excepted to, but no ground of exception was specified. This manner of attempting to save exceptions has been too frequently held unavailing to now be sanctioned. Fairness to the court, and to the opposing party, requires the exceptant to disclose the defect relied upon. However, it cannot be said that the argument was unwarranted.

[28] The first exception to the charge presents, in different form, the questions raised by the motion for a verdict, and they require no further notice. The defendant argues in support of this exception that the charge is faulty in that it did not submit to the jury the questions as to what place of delivery and what terms of payment were intended by the parties. A sufficient answer to this is that these questions are not raised by the exception.

[29] The court, in effect, charged the jury that, under the contract the plaintiff was bound to furnish potatoes equal in quality to potatoes ordinarily sold in the same general locality of Crisfield, Maryland, as branded potatoes, at that time. This was excepted to on the grounds, (a) that in view of plaintiff's testimony that he "presumed" the defendant understood he was buying No. 1 potatoes, and the defendant's testimony that such was his understanding, it was the duty of the plain-

tiff to furnish No. 1 potatoes regardless of branded standards, (b) because the court did not instruct the jury that failure by the plaintiff to any appreciable extent to furnish potatoes equal to branded potatoes would preclude a recovery, and (c) because, "in determining the standard of branded potatoes the jury should not be limited to the general locality where the plaintiff resides, but it should be the general market for branded potatoes as established by interstate commerce should be included, and also the kind of potatoes which are sold as branded potatoes in the market of delivery should be considered."

In support of the first exception, the defendant claimed below, and claims here, that he understood that the contract called for No. 1 potatoes, and that the plaintiff knew that he so understood it, therefore, it must be taken that they contracted with reference to that standard. The defendant testified that such was his understanding. Conceding, but without deciding, that this was permissible in this action, it cannot be said as a matter of law that the evidence showed that the plaintiff knew of that understanding, or was chargeable with knowledge thereof, when this contract was entered into. True, he testified on cross-examination, after hearing defendant's testimony as to his understanding, that, "He may have thought that he was buying No. 1" and "Probably he thought he was buying No. 1." These statements, made at the time they were, would appear to be no more than an admission that the defendant's testimony bore the appearance of truth, but whether they meant that or, as the defendant claims, that plaintiff knew how the defendant understood the contract when it was made, was for the jury. The defendant was not entitled to the charge contended for unless a contract making No. 1 the standard of quality was established, and he did not ask to have that question submitted to the jury, or complain because it was not. In the circumstances, the exception is without merit.

[30] We think the charge sufficient to meet the shortage complained of under the next exception.

[31, 32] In the circumstances disclosed, it should be held that this is a Maryland contract. The general rule that a contract negotiated by mail or telegraphic communication is regarded as made at the offeree's residence, if the offer is accepted as made (Williston on Contracts, 97), is based on the theory that the contract is there completed. Such was not the

2

situation in this case. Here, by the very terms of the offer, the contract was not to be complete until the offeree's acceptance was accepted or confirmed, and that, the parties must have contemplated, was to be done in Maryland. Not only was the final act, which gave the negotiations vitality as a contract, to be done in Maryland, but the potatoes were to be, and were, shipped f. o. b. that point. Being a Maryland contract, and no other standard of quality being specified, the standard adopted by the court below was correct.

[33, 34] Moreover, the exception is too indefinite to be availing. It is not apparent whether the exceptant desired as a standard of quality that adopted in the general market or the Barre market, in fact he does not except because one or the other of those standards was not adopted—the question now argued—but because the jury was not allowed to consider the evidence tending to support those standards. As to this, it is sufficient to say that there was no evidence tending to show the Barre standard, if it had one; and while the witness Mullholland testified that he was familiar with three brands of potatoes in the markets of the Atlantic and New England states which conformed to the United States Department of Agriculture standard, he also testified that there were hundreds of associations in the United States, with which he was not familiar, that had adopted brands for their potatoes and used different rules for classifying and grading. In this situation, it cannot fairly be said that his evidence tended to show the standard of branded potatoes in the general market. That the three brands with which he was familiar conformed to the United States standard had no tendency to show that potatoes of a somewhat inferior quality would not meet the standard of the general market.

The defendant saved an exception to the overruling of a motion to set aside the verdict. The only question relied upon under this exception is covered by what we said in disposing of the motion for a verdict.

[35] The defendant has brought a petition for a new trial based on newly discovered evidence, which it is claimed tends to show that plaintiff's evidence as to the grade of potatoes sold as "branded" in the locality from which these potatoes were shipped was false. In brief, the petition alleges, in a general way, the plaintiff's evidence on that issue; that the defendant did

not know until the time of the trial that plaintiff claimed that branded potatoes in Crisfield, Maryland, ordinarily were not packed in conformity to requirements of United States No. 1; that he then used due diligence to secure evidence on that point, to wit, "conferred with Lionel Mullholland, the representative of the United States Government Bureau of Markets and the State of Vermont co-operating, and with other persons familiar with branded potatoes coming into northern markets," but that he did not know, and in the time available had no reasonable means of ascertaining accurately the practice in the locality of Crisfield, Maryland; that he is now informed that the plaintiff testified falsely as to such practice; that the usage in that locality is to pack as branded only potatoes that conform, or are supposed to conform, to the United States grade No. 1, except a very limited quantity of United States grade No. 2; that he was misled by the fraud and perjury of the plaintiff, and that the newly discovered evidence will most probably result in a verdict in his favor.

With the merits of this petition we have no concern, for it clearly appears that the defendant failed to use such diligence to discover the alleged facts as the law requires. Since the contract is a Maryland contract, and calls for potatoes equal in quality to branded potatoes, it would seem that the defendant should have been prepared on the issue presented by the petition before he went to trial; but, be that as it may, the record shows that the plaintiff testified early in the trial, which occupied part of four days, to all of the facts which the petition alleges were false. That the defendant then realized the force of plaintiff's evidence, and had doubts as to the truth of it, appears from the fact that he conferred with Mullholland, and others, concerning the matter. But there, his efforts to ascertain the truth ended. He neither asked for more time to investigate, nor used such time as he actually had for that purpose. He chose, rather, to gamble on the verdict and, if necessary, investigate later. Having taken that course, he is not entitled to the relief prayed for.

*Judgment affirmed.    Petition denied with costs.*